# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

       Plaintiff

       v.                     Civil Action No.: ____

MAYNARD STEEL CASTING
COMPANY,

       Defendant.

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, and acting on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

## NATURE OF ACTION

1.    The United States brings this civil action against Maynard Steel Casting Company ("Defendant") for civil penalties and injunctive relief as a result of violations of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 *et seq*., the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 *et seq*., and their implementing regulations. This action is based on violations that occurred at Defendant's steel casting foundry, located at 2856 South 27th Street, Milwaukee, Wisconsin (the "Foundry").

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action pursuant to CAA § 113(b), 42 U.S.C. § 7413(b); RCRA § 3008(a), 42 U.S.C. § 6928(a); and 28 U.S.C. §§ 1331, 1345, and 1355.

3. Venue is proper in this district pursuant to CAA § 113(b), 42 U.S.C. § 7413(b); RCRA § 3008(a), 42 U.S.C. § 6928(a); and 28 U.S.C. §§ 1391(b) and (c), and §1395(a), because the violations occurred or are occurring in this district, and the Defendant conducts business in this district.

## NOTICES

4. On September 26, 2011, EPA issued to Defendant a CAA Notice and Finding of Violation ("NOV"), and provided a copy of this Notice to the State of Wisconsin as required by Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1). The thirty-day period between issuance of the NOV and commencement of a civil action, as required under CAA § 113, 42 U.S.C. § 7413, has elapsed.

5. On July 3, 2012, EPA issued a RCRA NOV and provided a copy of this Notice to the State of Wisconsin as required by RCRA § 3008(a), 42 U.S.C. § 6928(a).

6. The United States is providing notice of the commencement of this action to the State of Wisconsin as required by CAA § 113(b), 42 U.S.C. § 7413(b), and RCRA § 3008(a)(2), 42 U.S.C. § 6928(a)(2).

## AUTHORITY

7. Authority to bring this action is vested in the United States Attorney General by CAA § 305, 42 U.S.C. § 7605, RCRA § 3008(a), 42 U.S.C. § 6928(a), and pursuant to 28 U.S.C. §§ 516 and 519.

## DEFENDANT

8. The Defendant, a Delaware Corporation with headquarters in Milwaukee, Wisconsin, owns and operates a steel casting Foundry at 2856 South 27th Street, Milwaukee, Wisconsin.

2

9.     The Defendant is a "person" as defined in CAA § 302(e), 42 U.S.C. § 7602(e), and RCRA § 1004(15), 42 U.S.C. § 6903(15).

**General Allegations Relevant to the CAA**

10.     The Defendant's Foundry uses four electric arc furnaces ("EAF" Nos. 4, 5, 6, and 7) to melt scrap steel into molten form, which is poured into a mold. The molten metal cools and hardens in the mold to create a casting, or near-final product.

11.     The Defendant produces steel alloy onsite. The alloy metals include chrome, nickel, and manganese.

12.     During the steel melting process, Defendant's EAFs generate significant emissions of air pollution. Emissions generated during a heat include particulate matter with a diameter of less than ten microns, commonly called $PM_{10}$, and manganese, a hazardous air pollutant.

13.     Significant emissions are released when an EAF is in a tilted position. Tilting the EAFs is necessary during certain phases of the melting process, including a phase called refining. Refining is the process of using lances to infuse oxygen into the molten metal, causing impurities to rise to the top, where they can be removed or "slagged".

14.     The EAFs are each equipped with a fume collection system designed to capture furnace emissions. Each furnace's fume collection system includes a hood designed to capture emissions as they rise off the furnace. Any captured emissions are drawn by a fan into ductwork and directed to a bag house. The baghouses are designed to filter out particulate matter in the emissions. The emissions are then directed out of the Foundry and into the atmosphere through a stack.

15.     Prior to 2013, the EAF hoods disengaged while the furnace was tilted, causing significant emissions to escape the Foundry without entering the fume collection system. In

3

approximately 2013, Maynard altered the fume collections systems for EAF Nos. 5, 6, and 7. The fume collection systems are now comprised of a side-draft hood, a telescoping duct designed to allow the EAF to tilt without disengaging the hood, ductwork to a baghouse, a baghouse fan, and an exhaust stack.

16.     EAF No. 4 is not currently in operation, and its fume collection system does not include the equipment that was installed on EAF Nos. 5, 6, and 7 in 2013. The fume collection system for EAF No. 4 is comprised of a furnace cover exhaust hood, ductwork from the furnace cover hood to a baghouse (without telescoping capability to remain engaged when the EAF is tilted), a baghouse, fan, and an exhaust stack. EAF No. 4 also has a building roof canopy hood that is intended to capture emissions when the furnace is tilted, and those emissions are drawn through ducts to EAF No. 4's baghouse.

17.     Since 2013, Defendant has not conducted testing adequate to demonstrate that each of Defendant's altered fume collection systems effectively captures emissions at the interface between the furnace and its hood, or that each system adequately captures emissions within the limits of Defendant's Title V Operating Permit.

**General Allegations Relevant to the RCRA**

18.     Each of Defendant's EAF fume collections systems includes a baghouse. The baghouses contain a series of fabric filters designed to capture particulate matter in the emissions created during the melting process. The dust that accumulates in the baghouse must be routinely removed and tested to determine if it contains hazardous constituents.

19.     Based on laboratory testing conducted in October 2009, Defendant's Foundry produced dust containing the chemical elements barium, cadmium, and hexavalent chromium. All three elements are identified as hazardous constituents in the RCRA implementing regulations, 40

4

C.F.R. Part 261, Appendix VIII. Analysis of dust from each of the four EAFs revealed levels of hexavalent chromium greater than five milligrams per liter. At this concentration, the dust is a hazardous waste under Wis. Admin. Code NR § 661.24 and 40 C.F.R. § 261.24.

20.     Hexavalent chromium is a known human carcinogen. In addition, workplace exposure to hexavalent chromium may cause lung cancer and damage to the nose, throat, lungs, eyes, and skin.

## CLEAN AIR ACT

21.     The CAA establishes a framework designed to protect and enhance the quality of the Nation's air so as to promote public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401.

### National Ambient Air Quality Standards

22.     The CAA requires the EPA Administrator to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for seven "criteria" air pollutants—including particulate matter—for which air quality criteria have been issued pursuant to CAA §§ 108-109, 42 U.S.C. § 7408-9.

23.     The CAA requires each state to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. CAA § 107(d), 42 U.S.C. §7407(d). An area that meets the NAAQS for a particular pollutant is an "attainment" area. An area that does not meet the NAAQS is a "nonattainment" area.

24.     At all times relevant to this Complaint, Milwaukee County, Wisconsin, where Defendant's Foundry is located, was in attainment with the NAAQS for $PM_{10}$.

5

**State Implementation Plan**

25.     Pursuant to 42 U.S.C. § 7410, each State must adopt and submit to EPA for approval a State Implementation Plan ("SIP") that provides for the implementation, maintenance, and enforcement of the NAAQS. Each SIP must include enforceable emission limitations. CAA § 110(a)(2)(A), 42 U.S.C. § 7410(a)(2)(A).

26.     Once EPA approves the state's emission limitations, these provisions constitute the state's "applicable implementation plan," within the meaning of CAA §§ 113 and 302(q), 42 U.S.C. §§ 7413 and 7602(q). The provisions are considered that state's "SIP Rules" and are federally enforceable under CAA Section 113(a)(1) and (b)(1), 42 U.S.C. § 7413(a)(1) and (b)(1), and 40 C.F.R. § 52.23.

27.     On January 31, 2011, EPA approved state law Wis. Admin. Code NR § 404.04(8) as part of Wisconsin's federally enforceable SIP. 76 Fed. Reg. 5,270. This State law establishes the standard for $PM_{10}$ as 150 micrograms per cubic meter ($\mu g/m^3$) average concentration over a 24-hour period.

28.     On March 9, 1983, EPA approved state law Wis. Admin. Code NR § 154.11(1) as part of Wisconsin's federally enforceable SIP. 48 Fed. Reg. 9,860. State law Wis. Admin. Code NR § 154.11(1) has since been re-codified at Wis. Admin. Code NR § 415.03. This regulation prohibits any person from causing, allowing, or permitting particulate matter to be emitted into the ambient air which substantially contributes to exceeding an air standard or creates air pollution.

**National Emission Standards for Hazardous Air Pollutants**

29.     The CAA also regulates emissions of hazardous air pollutants through the National Emission Standards for Hazardous Air Pollutants ("NESHAP") program. CAA §112, 42 U.S.C. § 7412. Under the NESHAP, a foundry that emits more than ten tons of any hazardous air pollutant

6

("HAP") per year is a "major source" of hazardous air pollutants ("HAPs") and is subject to the NESHAP requirements set forth in 40 C.F.R. Part 63, Subpart EEEEE ("Foundry NESHAP"); 40 C.F.R. § 63.7681.

30.     Congress listed manganese compounds as hazardous air pollutants in the CAA. A manganese compound is any unique chemical substance that contains manganese as part of that chemical's infrastructure. 42 U.S.C. § 7412(b)(1).

31.     Beginning in approximately December 2007, Defendant's Foundry emitted into the ambient air more than ten tons of manganese per year, based on a previous twelve-month rolling average. Defendant is therefore a "major source" of hazardous air pollutants within the meaning of 40 C.F.R. § 63.7681, and is subject to the Foundry NESHAP requirements.

32.     The Foundry NESHAP requires the application of technology-based emission standards referred to as "Maximum Achievable Control Technology" standards.

33.     Sources subject to the Foundry NESHAP must meet various regulatory requirements, including limitations on particulate matter emitted to the atmosphere and initial and ongoing testing and monitoring of pollution control technology.

34.     Owners and operators of an iron and steel foundry are prohibited from discharging emissions through a conveyance to the atmosphere that exceed either 0.0050 grains of particulate matter per dry standard cubic foot or 0.0040 grains per dry standard cubic foot of metal HAP. 40 C.F.R. § 63.7690(a)(1).

35.     Owners and operators of an iron and steel foundry are required to be in compliance with the emissions limitations, work practice standards, and operation and maintenance requirements of the Foundry NESHAP at all times, except during periods of startup, shutdown or malfunction. 40 C.F.R. § 63.7720(a).

7

36.     Owners and operators of an iron and steel foundry that is a major source of HAP emissions are required to operate and maintain the foundry, including air pollution control and monitoring equipment, in a manner consistent with good air pollution control practices for minimizing emissions at least to the levels set forth in the Foundry NESHAP at 40 C.F.R. Part 63, Subpart EEEEE. 40 C.F.R. § 63.7710(a).

37.     Owners and operators of an iron and steel foundry that is a major source of HAP emissions are required to prepare and operate at all times according to a written operation and maintenance ("O & M") plan for each capture and collection system and control device for an emissions source.  40 C.F.R. § 63.7710(b).

38.     Owners and operators of an iron and steel foundry that is a major source of HAP emissions are required to develop a written startup, shutdown and malfunction plan.  40 C.F.R. § 63.7730(a).

39.     Owners and operators of an iron and steel foundry that is a major source of HAP emissions are required to conduct a performance test no later than 180 calendar days after the compliance date specified in 40 C.F.R. § 63.7683 to demonstrate compliance with the applicable emissions limitation in 40 C.F.R. § 63.7690. 40 C.F.R. § 63.7730(a).

40.     Owners and operators of an iron and steel foundry that is a major source of HAP emissions are required to install, operate, and maintain a bag leak detection system according to the requirements in 40 C.F.R. § 63.7741(b)(1) through (7) for each negative pressure baghouse or positive pressure baghouse equipped with a stack that is applied to meet any particulate matter or total metal HAP emissions limitation.  40 C.F.R. § 63.7741(b).

41.     Owners and operators of an iron and steel foundry that became a major source of HAP emissions and that "started up" on or after April 22, 2004, are required to submit an initial

8

notification stating that the owner or operator is subject to the Foundry NESHAP no later than 120 days after becoming subject to the Foundry NESHAP. 40 C.F.R. § 63.7750(c).

42.     Owners and operators of an iron and steel foundry that is a major source of HAP emissions are required to submit semiannual compliance reports to the permitting authority according to the requirements specified in § 63.7751(a)(1) through (5). 40 C.F.R. § 63.7751(a).

**Title V Operating Permit Program**

43.     Title V of the CAA, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources of air pollution, including "major sources." The purpose of Title V is to ensure that all "applicable requirements" for compliance with the CAA, including SIP requirements, are collected in one place.

44.     A "major source" for purposes of Title V is defined, among other things, as a source that emits or has a potential to emit 10 tons per year or more of any HAP, or 100 tons per year or more of any criteria pollutant. 42 U.S.C. § 7661(2).

45.     Defendant's Foundry has the potential to emit more than 100 tons per year of particulate matter, which is a criteria pollutant. It is therefore a major source of air pollution, requiring it to operate in compliance with a permit issued under Title V of the Clean Air Act.

46.     In 2001, EPA granted final approval to Wisconsin's Title V operating permit program, which is codified at Wis. Admin. Code NR 407. 66 Fed. Reg. 62,951 (Dec. 4, 2001).

47.     Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), the implementing regulations at 40 C.F.R. § 70(b), and the Wisconsin Title V operating permit program have at all relevant times made it unlawful for any person to operate a major source of criteria pollutants except in compliance with a permit issued under Title V.

48. Section 503(c) of the CAA, 42 U.S.C. § 7661b(c), the implementing regulations at 40 C.F.R. §§ 70.5(a), (c), and (d), and Wis. Admin. Code NR § 47 have at all relevant times required the owner or operator of a major source to submit an application for an amended Title V permit that is timely and complete, and includes among other things: the citations and descriptions of all requirements applicable to the source (including all NESHAP requirements); a description of, and compliance plan for, requirements for which the source is not in compliance; and a certification by a responsible official of the truth, accuracy, and completeness of the application.

49. Section 504(a) of the CAA, 42 U.S.C. § 7661c(a), and the implementing regulations at 40 C.F.R. § 70.6(a), have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with "applicable requirements" of the CAA. "Applicable requirements" are defined to include any relevant NESHAP requirements. 40 C.F.R. § 70.2.

50. On September 28, 2009, the WDNR issued Title V Operation Permit Renewal No. 241005710-P10 to the Defendant for the Foundry ("2009 Title V Permit"). The 2009 Title V Permit includes, among other things, an emission limit for particulate matter for each of the four EAFs at the Foundry and, for the Foundry as a whole, a monthly emission limit on any HAP.

51. On November 24, 2014, the WDNR issued Title V Operation Permit Renewal No. 241005710-P20 to the Defendant for the Foundry ("2014 Title V Permit"). The 2014 Title V Permit includes an emission limit for particulate matter for each of the four EAFs at the Foundry and, for the Foundry as a whole, a monthly emission limit on any HAP.

## RESOURCE CONSERVATION AND RECOVERY ACT

52. RCRA establishes a comprehensive federal regulatory program for the management of solid and hazardous wastes, 42 U.S.C. § 6901-6992k. One of the purposes of

Case 2:17-cv-00292-WED   Filed 03/01/17   Page 10 of 29   Document 1

RCRA is to substantially diminish the toxicity of waste or the likelihood of migration of hazardous constituents to minimize threats to human health and the environment. RCRA § 3004(m), 42 U.S.C. § 6924(m).

53.     The EPA Administrator may, if certain criteria are met, authorize a state to operate a "hazardous waste program" in lieu of the regulations comprising the federal hazardous waste program. RCRA § 3006, 42 U.S.C. § 6926.

54.     The State of Wisconsin created its own RCRA regulations, and EPA granted Wisconsin final authorization to implement its RCRA hazardous waste management program on January 30, 1986, effective January 31, 1986. 51 Fed. Reg. 3,783. Since then, EPA has authorized various changes to Wisconsin's program.

55.     EPA is authorized to enforce the regulations of Wisconsin's authorized RCRA program. RCRA § 3008(a), 42 U.S.C. § 6928(a).

56.     Wisconsin's hazardous waste regulations are set forth in the Wis. Admin. Code NR § 660 *et seq*.

57.     The EPA-authorized Wisconsin hazardous waste regulations are incorporated by reference as part of the hazardous waste management program under Subtitle C of RCRA, 40 C.F.R. § 272.2501(c).

58.     RCRA imposes specific restrictions on the land disposal of hazardous wastes such as chromium. EPA promulgated land disposal regulations, establishing standards for the treatment and disposal of hazardous wastes. RCRA § 3004; 40 C.F.R. Part 268.  RCRA prohibits the land disposal of wastes that do not meet the required treatment standards. RCRA § 3004(d)-(g), 42 U.S.C. § 6924(d)-(g).

Case 2:17-cv-00292-WED   Filed 03/01/17   Page 11 of 29   Document 1

59.     Under both Wisconsin and federal regulations, a person who generates solid waste must determine if that waste is a hazardous waste. Wis. Admin. Code NR § 662.011; 40 C.F.R. § 262.11.

60.     Provided certain conditions are met, a generator of hazardous wastes may accumulate the waste on site for 90 days or less without a license to operate a hazardous waste storage facility. These conditions include: (a) placing the waste in a non-leaking container that is in good condition and is clearly marked "Hazardous Waste" with the date on which the accumulation of that waste began pursuant to Wis. Admin. Code NR § 662.034(1)(a)-(c); (b) complying with the personnel training requirements of Wis. Admin. Code NR § 665.0016; (c) complying with fire and emergency procedure requirements for owners or operators of a storage facility pursuant to Wis. Admin. Code NR § 662.034(1)(d) and Wis. Admin. Code NR § 665.0031-0037; and (d) maintaining a contingency plan for the unplanned release of hazardous waste into the air, soil, or water pursuant to Wis. Admin. Code NR § 662.034(1)(d) and Wis. Admin. Code NR § 665.0051.

61.     Absent an extension from the Wisconsin Department of Natural Resources, a person who accumulates hazardous wastes on-site for more than 90 days is an operator of a storage facility, and therefore, with certain limited exceptions, is subject to licensing and other requirements. Wis. Admin. Code NR § 670 and 40 C.F.R. Part 270; Wis. Admin. Code NR § 664-65 and 40 C.F.R. Parts 264-65; Wis. Admin. Code NR § 662.034 (1) and (2); 40 C.F.R. § 262.34(a) and (b).

62.     A person who transports, or offers for transport, a hazardous waste for off-site treatment, storage, or disposal must prepare a manifest on EPA Form 8700-22, and, if necessary,

12

EPA Form 8700-22A, according to instructions set forth in the appendix to 40 C.F.R. Part 262. Wis. Admin. Code NR § 662.020; 40 C.F.R. § 262.20.

63.     A generator of hazardous waste must also send a one-time written notice to each treatment or storage facility receiving the waste if the waste does not meet the applicable treatment standards set forth in Wis. Admin. Code NR § 668.40. Wis. Admin. Code NR § 668.07(1)(b); 40 C.F.R. § 268.7(a)(2).

**ENFORCEMENT PROVISIONS**

64.     Under both RCRA and the CAA, the EPA Administrator may bring a civil action for civil penalties and appropriate relief, including a temporary or permanent injunction, when any person has violated, or is currently in violation of, RCRA or the CAA, or their implementing regulations. RCRA § 3008(a), 42 U.S.C. § 6928(a); CAA § 113(b), 42 U.S.C. § 7413(b).

65.     Any person who violates any requirement of RCRA or the CAA, or their respective implementing regulations, is subject to a maximum statutory civil penalty of up to $25,000 per day for each violation, as adjusted for inflation, with each day in which a violation occurs constituting a separate violation. RCRA § 3008(g), 42 U.S.C. § 6928(g); CAA § 113(b), 42 U.S.C. § 7413(b).

66.     Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996 and the Federal Civil Penalties Inflation Adjustment Act of 2015, 28 U.S.C. § 2461 note: Pub. L. 114-74, Section 701, the maximum statutory civil penalties under both CAA and RCRA have been adjusted for inflation at 40 C.F.R. § 19.4. The applicable civil penalty levels for violations of both RCRA and CAA have increased to $27,500 per day for each violation occurring after January 30, 1997 and through March 14, 2004; $32,500 per day for each violation occurring after March 15, 2004 and through January 11, 2009; $37,500 per day for each violation occurring after January 12, 2009 and through November

13

1, 2015. Further, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 2015, for RCRA, the maximum civil penalty per day for each violation occurring after November 2, 2015 is $70,117, and for the CAA, the maximum civil penalty per day for each violation of the CAA after November 2, 2015 is $93,750. *Id.*

## EPA INSPECTIONS OF THE FOUNDRY

67.     On June 3 and 4, 2009, EPA conducted a RCRA inspection of the Foundry (the "June 2009 RCRA Inspection").

68.     On October 8, 2009, EPA conducted another RCRA inspection of the Foundry (the "October 2009 RCRA Inspection") during which it collected samples of dust, soil, sludge, and surface water at the Foundry.

69.     Analysis of dust from each of the four EAFs revealed levels of chromium greater than five milligrams per liter. At this concentration, the dust is a hazardous waste under Wis. Admin. Code NR § 661.24 and 40 C.F.R. § 261.24.

70.     On June 23 and 24, 2011, EPA conducted a CAA inspection of the Foundry (the "2011 CAA Inspection").

## FIRST CLAIM FOR RELIEF—CAA
### (Contributing to an Exceedance of the PM$_{10}$ NAAQS or Creating Air Pollution)

71.     Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

72.     From September 2009 to at least December 2012, Defendant emitted particulate matter into the ambient air in an amount that substantially contributed to an exceedance of the NAAQS for PM$_{10}$ or created air pollution.

73.     Defendant therefore violated Wis. Admin. Code NR § 415.03 of the federally enforceable Wisconsin SIP, Part II.C.2.a. of its 2009 Title V Permit, and Section 502(a) of the CAA, 42 U.S.C. § 7661a(a).

74.     As provided in CAA § 113(b), 42 U.S.C. § 7413(b), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

## SECOND CLAIM FOR RELIEF – CAA
### (Exceeding PM Emissions Limits under Defendant's 2009 Title V Permit)

75.     Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

76.     Part I.B.1.a(1)(b) of Defendant's 2009 Title V Permit requires Defendant to limit its emissions of particulate matter from EAF No. 5 to 1.75 pounds per hour.

77.     During performance stack testing on December 20, 2010, Defendant reported emitting 7.0 pounds of particulate matter per hour from EAF No. 5, thereby exceeding the emissions limit of its 2009 Title V Permit, in violation of CAA § 502(a), 42 U.S.C. § 7661a(a). EAF No. 5 did not pass a subsequent stack test until June 1, 2011.

78.     Part I.B.1.a(1)(c) of Defendant's 2009 Title V Permit required Defendant to limit its emissions of particulate matter from EAF No. 6 to 2.38 pounds per hour.

79.     During performance stack testing on December 21, 2010, Defendant reported emitting 4.49 pounds of particulate matter per hour from EAF No. 6, thereby exceeding the emissions limit of its 2009 Title V Permit, in violation of CAA § 502(a), 42 U.S.C. § 7661a(a). EAF No. 6 did not pass a subsequent stack test until July 22, 2011.

80.     Part I.B.1.a(1)(d) of Defendant's 2009 Title V Permit required Defendant to limit its emissions of particulate matter from EAF No. 7 to 5.32 pounds per hour.

81.     During performance stack testing on December 21, 2010, Defendant emitted 37.27 pounds of particulate matter per hour from EAF No. 7, thereby exceeding the emissions limit of its 2009 Title V Permit, in violation of CAA § 502(a), 42 U.S.C. § 7661a(a). EAF No. 7 did not pass a subsequent stack test until June 24, 2011.

15

82.     As provided in CAA § 113(b), 42 U.S.C. § 7413(b), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

**THIRD CLAIM FOR RELIEF – CAA**
**(Exceeding Monthly Emissions Limit for a HAP under Defendant's 2009 Title V Permit)**

83.     Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

84.     Part I.ZZZ.1.b(1) of Defendant's 2009 Title V Permit requires Defendant to limit its total emissions of manganese, a hazardous air pollutant, to no more than 1,666 pounds per month.

85.     During October 2010, and each month from December 2010 through April 2011, and each month from June 2011 to September 2011, Defendant's Foundry failed to limit its emissions of manganese to no more than 1,666 pounds per month, in violation of CAA § 502(a), 42 U.S.C. § 7661a(a).84.

86.     As provided in CAA § 113(b), 42 U.S.C. § 7413(b), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

**FOURTH CLAIM FOR RELIEF – CAA**
**(Failure to Operate within NESHAP PM Emission Limits)**

87.     Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

88.     As set forth in Paragraphs 29-31 of this Complaint, Defendant is a major source of hazardous air pollutants and is subject to the PM emission limit under the Foundry NESHAP.

89.     On December 20, 2010, Defendant conducted a stack performance test during which EAF No. 5 emitted 0.0185 grains per dry standard cubic foot ("gr./dscf"), which exceeded

16

the Foundry NESHAP emissions limit of 0.0050 gr./dscf, in violation of 40 C.F.R. § 63.7720(a). EAF No. 5 did not pass a subsequent stack performance test until June 1, 2011.

90.    On December 21, 2010, Defendant conducted a stack performance test during which EAF No. 6 emitted 0.0103 gr./dscf, which exceeded the Foundry NESHAP emissions limit of 0.0050gr./dscf, in violation of 40 C.F.R. § 63.7720(a).  EAF No. 6 did not pass a subsequent stack performance test until July 22, 2011.

91.    On December 20-21, 2010, Defendant conducted a stack performance test during which EAF No. 7 emitted 0.0794 gr./dscf which exceeded the Foundry NESHAP emissions limit of 0.0050 gr./dscf, in violation of 40 C.F.R. § 63.7720(a).

92.    On June 23-24, 2011, Defendant conducted a subsequent stack performance test. This time, EAF No. 7 emitted 0.0052 gr./dscf, which again exceeded the Foundry NESHAP emissions limit of 0.0050 gr./dscf, in violation of 40 C.F.R. § 63.7720(a). Since then, EAF No. 7 has not passed a stack performance test that complied with Foundry NESHAP emissions limit as measured by gr./dscf.

93.    As provided in CAA § 113(b), 42 U.S.C. § 7413(b), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

## FIFTH CLAIM FOR RELIEF – CAA
### (Failure to Comply with NESHAP Reporting and Monitoring Requirements)

94.    Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

95.    Since at least December 2007, Defendant has been required to comply with the reporting and monitoring requirements of the Foundry NESHAP set forth at 40 C.F.R. Part 63, Subpart EEEEE. Defendant violated several of those requirements, including:

17

a. failing to prepare and operate its Foundry according to an operations and maintenance plan, in violation of 40 C.F.R. § 63.7710(b).

b. failing to develop a written startup, shutdown, and malfunction plan, in violation of 40 C.F.R. § 63.7720(c).

c. failing to conduct particulate matter performance tests on EAF Nos. 4, 5, 6, and 7, in violation of 40 C.F.R. § 63.7730(a).

d. failing to conduct initial opacity observations, and conduct subsequent opacity observations every six months thereafter, in violation of 40 C.F.R. §§ 63.7730(a) and 63.7731(b).

e. failing to install, operate, and maintain a bag leak detection system for each EAF's baghouse, including monitoring the relative change in particulate matter loadings in the baghouse using the bag leak detection system, in violation of 40 C.F.R. § 63.7741(b).

f. failing to submit to the WDNR an initial notification that it is a major source of hazardous air pollutants, in violation of 40 C.F.R. § 63.7750(c).

g. failing to submit semiannual compliance reports to the WDNR, in violation of 40 C.F.R. § 63.7751(a).

96. Defendant's conduct violates CAA § 112, 42 U.S.C. § 7412, and the Foundry NESHAP standards set forth at 40 C.F.R. Part 63, Subpart EEEEE.

97. As provided in CAA § 113(b), 42 U.S.C. § 7413(b), each of the violations in this claim subjects Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

### SIXTH CLAIM FOR RELIEF – CAA
**(Failure to Amend Title V Permit Application)**

98. Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

18

99. Since at least December 2007, Defendant has been a major source of HAPs, triggering its obligation to, among other things, obtain a Title V permit, submit a Title V permit application, and/or update its existing application to include all applicable requirements, including the NESHAP requirements.

100. Since December 2007, Defendant has failed to submit a complete application and/or update its application for a Title V operating permit that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet all NESHAP requirements), and other specific information that may be necessary to implement and enforce the applicable requirements of the CAA, Title V, or to determine the applicability of such requirements, as required by CAA § 503(c), 42 U.S.C. § 7661b(c), and 40 C.F.R. § 70.5.

101. Defendant thereafter operated the Foundry without meeting the required limitations and without applying for and/or obtaining a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.

102. Defendant's conduct violates CAA §§ 502(a), 503(c) and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c) and 7661c(a), and 40 C.F.R. §§ 70.5-70.6.

103. As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

## SEVENTH CLAIM FOR RELIEF--CAA
### (Failure to Operate Air Pollution Control Equipment in Conformance
### with Good Engineering Practices)

104.     Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

105.     Since at least December 2010, Defendant has failed to operate and maintain all air pollution control equipment in conformance with good engineering practices for minimizing emissions, in violation of Part I.ZZZ.7.a(2) of Defendant's 2009 and 2014 Title V Permits and the Foundry NESHAP at 40 C.F.R. § 63.7710(a). For example:

a.     during the 2011 CAA Inspection, EPA observed that EAF No. 4's fume collection system failed to capture significant emissions at the interface between the furnace and its hood, in both the upright and tilted positions;

b.     during the 2011 CAA Inspection, EPA observed that EAF No. 5's fume collection system failed to capture significant emissions at the interface between the furnace and its hood in the upright position;

c.     since at least 2009, Defendant has operated its EAFs in a manner that have substantially contributed to an exceedance of the NAAQS for $PM_{10}$ or created air pollution (First Claim for Relief);

d.     since at least December 2010, Defendant has failed to limit its emissions of PM in compliance with its 2009 Title V Permit (Second Claim for Relief);

e.     since at least October 2009, Defendant has failed to limit its monthly emissions of manganese (a HAP) to the emissions limit in Defendant's 2009 Title V Permit (Third Claim for Relief);

f.     since at least December 2010, Defendant has failed to operate within the Foundry NESHAP emission limits for PM (Fourth Claim for Relief);

20

g.     since at least December 2007, Defendant has failed to comply with Foundry NESHAP reporting and monitoring requirements (Fifth Claim for Relief); and

h.     since at least December 2010, Defendant has failed to properly maintain and keep in good repair each component of its fume collection systems, and has failed to operate its fume collection systems with sufficient draft so as to maximize the capture of EAF emissions during all phases of the heat cycle.

106.    Defendant's conduct violated CAA § 502(a), 42 U.S.C. § 7661a(a), the CAA Title V operating permit program regulations, CAA § 112, 42 U.S.C. § 7412, and the Foundry NESHAP set forth at 40 C.F.R. Part 63, Subpart EEEEE.

107.    As provided in CAA § 113(b), 42 U.S.C. § 7413(b), each of the violations in this claim subjects Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

## EIGHTH CLAIM FOR RELIEF -- RCRA
### (Failure to Determine Whether EAF Dust Was a Hazardous Waste)

108.    Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

109.    Wis. Admin. Code NR § 662.011 requires the owner or operator of a steel foundry to determine if its solid waste is hazardous.

110.    From approximately 1990 to December 2009, despite increasing its use of chrome in its alloys, Defendant failed to test its EAF dust for metals, and thereby failed to determine if the dust constituted a hazardous waste.

111.    As provided in RCRA § 3008(g), 42 U.S.C. § 6928(g), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

## NINTH CLAIM FOR RELIEF – RCRA
### (Failure to Prepare Hazardous Waste Manifests Prior to Transport)

112. Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

113. From approximately 1999 to December 2009, Defendant failed to prepare required hazardous waste manifests for EAF dust transported, or offered for transport, to off-site disposal facilities, in violation of Wis. Admin. Code NR § 662.020.

114. From approximately 1999 to December 2009, Defendant transported hundreds of tons of Defendant's EAF dust to solid waste landfills that were not authorized to accept hazardous waste, resulting in the potential for releases of chromium and other hazardous substances into the surrounding soil, ground water, and surface water.

115. As provided in RCRA § 3008(g), 42 U.S.C. § 6928(g), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

## TENTH CLAIM FOR RELIEF – RCRA
### (Failure to Properly Label Hazardous Waste)

116. Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

117. Wis. Admin. Code NR § 662.034(1)(b) and (c) require that a generator of hazardous waste clearly mark a hazardous waste container with the words "Hazardous Waste" and note on the container the date on which the accumulation of that waste began.

118. During EPA's June 2009 and October 2009 Inspections, EPA observed bags containing dust from Defendant's EAFs not labeled as hazardous waste or marked with the date Defendant began accumulating the dust, in violation of Wis. Admin. Code NR § 662.034(1)(b) and (c).

22

119.    As provided in RCRA § 3008(g), 42 U.S.C. § 6928(g), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

## ELEVENTH CLAIM FOR RELIEF – RCRA
### (Failure to Contain Hazardous Waste)

120.    Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

121.    Wis. Admin. Code NR § 662.034(1)(a)(i) and Wis. Admin. Code NR § 665.0171 require that a generator of hazardous waste contain the waste in a non-leaking container that is in good condition.

122.    During the June 2009 and October 2009 Inspections, EPA observed a hole in the front of the metal EAF dust storage box for EAF No. 7. The dust box was structurally defective and could not be closed because of the hole in the front of the box. This hole allowed EAF dust to spill onto the ground surrounding the box, in violation of Wis. Admin. Code NR § 662.034(1)(a)(i) and Wis. Admin. Code NR § 665.0171.

123.    As provided in RCRA § 3008(g), 42 U.S.C. § 6928(g), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

## TWELFTH CLAIM FOR RELIEF – RCRA
### (Release of Hazardous Constituents)

124.    Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

125.    Wis. Admin. Code NR § 662.034(1)(d) and Wis. Admin. Code NR § 665.0031 require a generator of hazardous waste to maintain and operate the Foundry to minimize the possibility of a release of hazardous substances to the air or soil.

126.    During the June 2009 and October 2009 Inspections, EPA observed a reddish dust on the ground near the EAF dust storage box for EAF No. 7. Chemical analysis of this dust revealed the presence of barium, cadmium, and chromium, each of which is a hazardous constituent under 40 C.F.R. Part 261, Appendix VIII.

127.    During the October 2009 Inspection, EPA also observed on the ground in the vicinity of EAF No. 4 a reddish dust. Chemical analysis of this dust revealed the presence of barium, cadmium, and chromium, each of which is a hazardous constituent under 40 C.F.R. Part 261, Appendix VIII.

128.    Defendant's failure to maintain and operate the Foundry to minimize the possibility of a release of hazardous constituents to the air or soil is a violation of Wis. Admin. Code NR § 662.034(1)(d) and Wis. Admin. Code NR § 665.0031.

129.    As provided in RCRA § 3008(g), 42 U.S.C. § 6928(g), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

## THIRTEENTH CLAIM FOR RELIEF – RCRA
### (Accumulation of Hazardous Waste for over 90 Days Without an Operating License)

130.    Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

131.    From July 2009 to December 2009, Defendant accumulated hazardous waste in the EAF dust storage box for EAF No. 7 for more than 90 days without an operating license, in violation of Wis. Admin. Code NR § 670.001(3) and RCRA § 3005(a), 42 U.S.C. § 6925(a).

132.    As provided in RCRA § 3008(g), 42 U.S.C. § 6928(g), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

24

## FOURTEENTH CLAIM FOR RELIEF – RCRA
### (Failure to Provide Employee Training on Hazardous Waste Handling Compliance)

133.     Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

134.     From approximately 1999 to December 2009, Defendant failed to provide its personnel with a program of classroom instruction or on-the-job training on compliance with hazardous waste handling requirements, in violation of Wis. Admin. Code NR § 662.034(1)(d) and Wis. Admin. Code NR § 665.0016.

135.     As provided in RCRA § 3008(g), 42 U.S.C. § 6928(g), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

## FIFTEENTH CLAIM FOR RELIEF – RCRA
### (Failure to Advise Local Authorities of Hazardous Waste Handling)

136.     Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

137.     From at least 1999 to February 2010, Defendant did not notify local authorities of the layout of the Foundry, the properties and hazards of the hazardous waste handled by Defendant at the Foundry, and the places where personnel would normally be working, in violation of Wis. Admin. Code NR § 662.034(1)(d) and Wis. Admin. Code NR § 665.0037.

138.     As provided in RCRA § 3008(g), 42 U.S.C. § 6928(g), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

## SIXTEENTH CLAIM FOR RELIEF – RCRA
### (Failure to Develop a Hazardous Waste Contingency Plan)

139.     Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

140.     Wis. Admin. Code NR § 662.034(1)(d) and Wis. Admin. Code NR § 665.0051 require a generator of hazardous waste to develop a hazardous waste contingency plan to minimize

hazards to human health or the environment from fires, explosions, or any unplanned sudden or non-sudden releases of hazardous waste to the air, soil, or surface water.

141.    From approximately 1999 to December 2009, Defendant failed to develop a hazardous waste contingency plan meeting these requirements.

142.    As provided in RCRA § 3008(g), 42 U.S.C. § 6928(g), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

## SEVENTEENTH CLAIM FOR RELIEF – RCRA
### (Failure to Provide Notice that EAF Dust Did Not Meet Hazardous Waste Treatment Standards)

143.    Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

144.    A generator of hazardous waste that ships waste to an off-site disposal facility is required to provide a one-time written notice to the treatment or storage facility receiving the waste that its waste does not meet applicable treatment standards set forth in Wis. Admin. Code NR § 668.40. Wis. Admin. Code NR § 668.07(1)(b).

145.    Prior to November 2009, when Defendant shipped hazardous EAF dust to Waste Management Inc. of Wisconsin ("WMIW"), it failed to provide this required written notification to WMIW, and WMIW disposed of the hazardous EAF dust at a solid waste disposal facility not authorized to accept hazardous waste during this time period.

146.    When Defendant shipped hazardous EAF dust to Veolia Environmental Services on December 22, 2009, it failed to provide this required written notification to Veolia even though Veolia was authorized to accept hazardous waste at the time.

147.    As provided in Section 3008(g) of the RCRA, 42 U.S.C. § 6928(g), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

<u>EIGHTEENTH CLAIM FOR RELIEF – RCRA</u>
**(Operating a Hazardous Waste Storage Facility without an Operator License)**

148.    Paragraphs 1-70 of this Complaint are re-alleged and incorporated by reference.

149.    From approximately 1999 to December 2009, Defendant was a hazardous waste generator and failed to meet the conditions that would have exempted it from applicable hazardous waste storage facility licensing requirements under Wis. Admin. Code NR § 662.034(1). These include:

a.    placing the hazardous waste in a non-leaking container that is in good condition and is clearly marked "Hazardous Waste" and states the date on which the accumulation of that waste began;

b.    complying with the personnel training requirements;

c.    complying with fire and emergency procedures for owners or operators of a storage facility; and

d.    maintaining a contingency plan for the unplanned release of hazardous waste into the air, soil, or water.

150.    The Defendant was, therefore, an unlicensed operator of a hazardous waste storage facility under Wis. Admin. Code NR § 664-65 and 40 C.F.R. Parts 264-65.

151.    When Defendant failed to apply for or receive from WDNR a hazardous waste storage operating license, it violated Wis. Admin. Code NR § 670.001(3) and RCRA § 3005(a), 42 U.S.C. § 6925(a).

27

152.     As provided in RCRA § 3008(g), 42 U.S.C. § 6928(g), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraphs 64-66 of this Complaint.

### **PRAYER FOR RELIEF**

WHEREFORE, based upon the allegations set forth above, the United States requests that this Court:

1.     Order such injunctive relief as is necessary to compel Defendant to comply with the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, RCRA, 42 U.S.C. § 6901 *et seq.*, their implementing regulations, as applicable to the Foundry, and any permits issued to the Defendant for the Foundry pursuant to the foregoing statutes;

2.     Assess a civil penalty against Defendant for each day of each separate violation of the CAA and RCRA;

3.     Award Plaintiff its costs of this action; and,

4.     Grant such other relief as the Court deems just and proper.

Dated:  March 1, 2017                    Respectfully submitted,


                                        THOMAS A. MARIANI, JR.
                                        Chief
                                        Environmental Enforcement Section
                                        Environment & Natural Resources Division
                                        United States Department of Justice


                                        CHRIS R. LARSEN
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        Eastern District of Wisconsin
                                        517 E. Wisconsin Avenue

28

Milwaukee, WI 53202
(414) 297-1700
Chris.Larsen@usdoj.gov


JENNIFER A. LUKAS-JACKSON
Senior Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 305-2332
Fax: (202) 514-0097
Jennifer.Lukas-Jackson@usdoj.gov


OF COUNSEL:
CATHERINE GARYPIE
Associate Regional Counsel
United States Environmental
Protection Agency, Region 5
77 W. Jackson Boulevard
Chicago, IL 60604-3590