# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff

        v.                                Civil Action No.: 17-CV-292

MAYNARD STEEL CASTING COMPANY,

        Defendant.

## CONSENT DECREE

# TABLE OF CONTENTS

**Section**                                                                 **Page**

I.      BACKGROUND ........................................................................... 1

II.     JURISDICTION AND VENUE ................................................... 3

III.    APPLICABILITY ........................................................................ 4

IV.     DEFINITIONS ............................................................................. 5

V.      CIVIL PENALTY ........................................................................ 8

VI.     COMPLIANCE REQUIREMENTS ............................................ 9

        Clean Air Act Requirements ..................................................... 9

        Resource Conservation and Recovery Act Requirements .......... 23

VII.    APPROVAL OF DELIVERABLES ........................................... 25

VIII.   PERMIT REQUIREMENTS ...................................................... 26

IX.     REPORTING REQUIREMENTS .............................................. 28

X.      STIPULATED PENALTIES ...................................................... 30

XI.     FORCE MAJEURE .................................................................... 37

XII.    DISPUTE RESOLUTION .......................................................... 39

XIII.   INFORMATION COLLECTION AND RETENTION .............. 42

XIV.    EFFECT OF THE SETTLEMENT/RESERVATION OF RIGHTS ............................... 44

XV.     CERTIFICATION ...................................................................... 46

XVI.    COSTS ....................................................................................... 47

XVII.   NOTICES ................................................................................... 47

XVIII.  EFFECTIVE DATE .................................................................... 49

XIX.    RETENTION OF JURISDICTION ............................................ 49

# TABLE OF CONTENTS

Section                                                                      Page

XX.    MODIFICATION ................................................................. 50

XXI.   TERMINATION................................................................... 50

XXII.  PUBLIC PARTICIPATION ............................................... 51

XXIII. SIGNATORIES/SERVICE............................................... 51

XXIV. APPENDICES .................................................................. 52

XXV.  INTEGRATION ............................................................... 52

XXVI. FINAL JUDGMENT........................................................ 53

## LIST OF APPENDICES

| | |
|---|---|
| Appendix A | Fume Collection System Study |
| Appendix B | Operations and Maintenance Plan |
| Appendix C | Electric Arc Furnace – Outdoor Fugitive Emissions Opacity Monitoring Protocol |
| Appendix D | List of Financial Information Submitted by Defendant for Ability to Pay Analysis |
| Appendix E | Diagram of RCRA Containment Structure |

# I. BACKGROUND

A.     Plaintiff United States of America, acting on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint concurrently with this Consent Decree. The Complaint alleges that Defendant, Maynard Steel Casting Company ("Defendant" or "Maynard Steel"), violated Section 502 of the Clean Air Act ("CAA") (Title V permits), 42 U.S.C. § 7661a, and the federally approved and enforceable State Implementation Plan ("SIP") adopted by the State of Wisconsin and approved by EPA pursuant to Section 110 of the CAA, 42 U.S.C. § 7410;

B.     The Complaint further alleges that Maynard Steel, as an owner and operator of its steel casting facility, violated various provisions of the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act ("RCRA"), including Section 3004 (standards applicable to owners and operators of hazardous waste treatment, storage and disposal facilities), 42 U.S.C. § 6924; Section 3005(a) (permits for treatment, storage or disposal of hazardous waste), 42 U.S.C. § 6925(a); and the State of Wisconsin's hazardous waste program authorized by EPA pursuant to RCRA Section 3006, 42 U.S.C. § 6926;

C.     On September 26, 2011, EPA issued a CAA Notice and Finding of Violation ("CAA NOV") to Defendant.  EPA provided a copy of the CAA NOV to the State of Wisconsin as required by Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1). On July 3, 2012, EPA issued a RCRA NOV to Defendant, and provided a copy of it to the State of Wisconsin as required by Section 3008(a) of the RCRA, 42 U.S.C. § 6928(a).  The United States has provided notice of the commencement of this action to the State of Wisconsin as required by CAA Section 113(b), 42 U.S.C. § 7413(b), and RCRA Section 3008(a), 42 U.S.C. § 6928(a)(2);

D.     In its Complaint, the United States alleges, among other things, that Defendant violated the CAA by operating four electric arc furnaces ("EAFs") at its steel foundry in Milwaukee, Wisconsin (the "Facility"), without installing and maintaining pollution control equipment adequate to control emissions of particulate matter within the limits of its federally-enforceable state permit, and as required by the CAA and applicable regulations, resulting in the release of particulate matter that exceeds permissible limits;

E.     In its Complaint, the United States further alleges, among other things, that Defendant violated RCRA by:  (1) failing to properly handle or dispose of dust containing high levels of chromium, a hazardous waste, produced by the EAFs at its Facility; (2) failing to determine whether the dust was a hazardous waste; and (3) sending the dust to landfills not authorized to accept hazardous waste;

F.     The United States alleges claims upon which relief may be granted against Defendant under the CAA and RCRA;

G.     In entering into this Consent Decree, Defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint;

H.     The United States has reviewed the Financial Information submitted by Defendant to determine whether Defendant is financially able to pay a civil penalty for the violations alleged in the Complaint. Based upon this Financial Information, the United States has determined that Defendant has limited financial ability to pay a civil penalty; and

I.     The Parties recognize, and, by entering this Consent Decree, the Court finds that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

2

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section II (Jurisdiction and Venue) below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II.   JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355; CAA § 113(b), 42 U.S.C. § 7413(b); and RCRA § 3008(a), 42 U.S.C. § 6928(a), and over the Parties. Venue is proper in this district pursuant to CAA § 113(b), 42 U.S.C. § 7413(b); RCRA § 3008(a), 42 U.S.C. §6928(a); and 28 U.S.C. §§ 1391(b) and (c), and 1395(a) because the violations alleged in the Complaint occurred and are occurring in this district, and because Defendant conducts business in this district. Solely for the purposes of this Consent Decree and the underlying Complaint, Defendant waives all objections and defenses that it may have to jurisdiction of this Court or to venue in this District. Defendant shall not challenge the entry of this Consent Decree, the terms of this Consent Decree, or this Court's jurisdiction to enter and enforce this Consent Decree.

2.     Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to CAA § 113(b) (CAA federal enforcement provision), 42 U.S.C. § 7413(b); CAA § 502 (Title V permit provision), 42 U.S.C. § 7661a; the federally approved and enforceable SIP adopted by the State of Wisconsin and approved by EPA pursuant to CAA § 110, 42 U.S.C. § 7410; RCRA § 3008 (RCRA federal enforcement provision), 42 U.SC. § 6928; RCRA § 3004 (standards applicable to owners and operators of hazardous waste treatment, storage, and disposal facilities), 42 U.S.C. § 6924; RCRA § 3005(a) (permits for treatment, storage or disposal of hazardous waste), 42 U.S.C. § 6925(a); RCRA § 3006 (authorized State

hazardous waste programs), 42 U.S.C. § 6926; and the State of Wisconsin's hazardous waste program authorized by EPA pursuant to RCRA Section 3006, 42 U.S.C. § 6926.

## III.  APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendant and any of its successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of this Decree are implemented.  At least thirty (30) Days prior to such transfer, Defendant shall provide a copy of this Decree to any proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 5, the United States Attorney for the Eastern District of Wisconsin, and the United States Department of Justice, in accordance with Section XVII of this Decree (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      Defendant shall provide a copy of this Decree to all officers, directors, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.  Relative to Defendant personnel, this condition may be satisfied by posting, in a common area accessible to the personnel noted above, a copy of this Decree or a notice with instructions as to where a copy of this Decree can be obtained for review; and either electronic posting on a Defendant intranet site or distribution to such personnel via e-

mail. Relative to the contractors noted above, this condition may be satisfied by e-mailing a copy of this Decree to the contractor and obtaining an email confirming receipt from the contractor. This condition will terminate concurrent with the time frame established under Section XXI of this Decree.

6.      In any action to enforce this Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents or contractors to take any actions necessary to comply with the provisions of this Decree.

## IV.  DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the CAA or RCRA, or in regulations promulgated pursuant to the CAA or authorized by RCRA, shall have the meaning assigned to them in the CAA, RCRA, or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Complaint" means the complaint filed by the United States in this action;

b.      "Consent Decree" or "Decree" means this Decree and all appendices attached hereto, which are listed in Section XXVIII (Appendices);

c.      "Day" means a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

d.      "Defendant" means Maynard Steel Casting Company;

e.  "Delta Section" means the area where the three EAF electrodes penetrate a furnace cover, and in the case of EAF No. 4, also includes the fume collection system hood, which is the primary inlet to the fume collection system for EAF No. 4.

f.  "EAF No. 4" means the EAF placed in service in 1945 and located in the Green Sand Foundry at the Facility;

g.  "EAF No. 5" means the EAF placed in service in 1956 and located in the Green Sand Foundry at the Facility;

h.  "EAF No. 6" means the EAF placed in service in 1962 and located in the Green Sand Foundry at the Facility;

i.  "EAF No. 7" means the EAF placed in service in 1978 and located in the No Bake East End of the Facility;

j.  "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

k.  "Effective Date" has the definition provided in Section XXII (Effective Date);

l.  "Facility" means Defendant's steel processing foundry located at 2856 South 27th Street, Milwaukee, Wisconsin;

m.  "Financial Information" means the third-party audited financial statements, corporate tax returns, and other finance related documents that Defendant provided to the United States in support of the assessment of Defendant's limited ability to pay a civil penalty, which are listed in Appendix D of this Decree;

n.　　"Fume Collection System" or "FCS" means the exhaust ventilation control and capture system for each EAF. For EAF Nos. 5, 6 and 7, the FCS is comprised of a side-draft hood; a telescoping duct that allows the side-draft hood to remain engaged when the EAF tilts; ductwork to a baghouse; a baghouse; fan; and an exhaust stack. For EAF No. 4, the FCS is currently comprised of a furnace cover exhaust hood (with its primary inlet at the Delta Section); ductwork from the furnace cover exhaust hood to a baghouse (without telescoping capability to remain engaged when the EAF is tilted); a baghouse; fan; and an exhaust stack. Additionally, EAF No. 4 has a building roof canopy hood that is intended to capture emissions when the furnace is tilted, which emissions are then ducted to EAF No. 4's baghouse.

o.　　"Melt Rate" means the rate at which metal charged to an EAF is turned from a solid to a liquid or molten state. Melt Rate shall be determined from the time an EAF is powered on and melting begins until removal of the electrodes and power off, and includes the refining, slagging and alloying processes associated with an EAF, but does not include time associated with equipment breakdown, delays requiring removal of the electrodes, and/or power off, so long as melting (i.e., active conversion of solid scrap metal to molten metal) does not continue.

p.　　"PM" means total particulate matter, including PM10 (meaning particulate matter smaller than 10 microns diameter) and PM2.5 (meaning particulate matter smaller than 2.5 microns diameter);

q.　　"Paragraph" means a portion of this Decree identified by an Arabic numeral.

r.　　"Parties" means the United States and the Defendant;

s.      "Section" means a portion of this Decree identified by a Roman numeral;

t.      "State" means the State of Wisconsin; and

u.      "United States" means the United States of America, acting on behalf of

EPA.

## V.   CIVIL PENALTY

8.      Within thirty (30) Days after the Effective Date of this Consent Decree, Defendant shall pay the first of five (5) consecutive monthly sums of $5,000 each, as a civil penalty, together with interest accruing from the date on which this Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.  Each subsequent monthly payment shall be submitted on or before the 15th day of the calendar month. This civil penalty has been determined based on an evaluation of the Financial Information provided by Defendant to the United States, concluding that Defendant has a limited ability to pay a civil penalty.

9.      Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following lodging of this Decree, by the Financial Litigation Unit of the United States Attorney's Office for the Eastern District of Wisconsin, 517 E. Wisconsin Ave., Room 530, Milwaukee, Wisconsin, phone number: 414-297-1700.  At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter that shall state that the payment is for the civil penalty owed pursuant to this Consent Decree in United States v. Maynard Steel Casting Company and reference the civil action number and DOJ case number 90-5-2-1-10613, to the United States in accordance with

Section XVII of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Dr.
> Cincinnati, Ohio  45268

10.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section X (Stipulated Penalties) in calculating its federal income tax.

## VI.     COMPLIANCE REQUIREMENTS

### Clean Air Act Requirements

11.     Defendant currently operates EAF Nos. 5, 6 and 7 at the Facility.  As of the date of lodging of this Decree, EAF No. 4 is not operational.  Prior to operating EAF No. 4, Defendant shall first inspect and repair as necessary the Delta Section of the associated FCS, and provide written notification to EPA of the results of the inspection and all repairs performed, pursuant to Section XVII (Notices).  Once EAF No. 4 is operating, Defendant shall not conduct more than 12 heats in a rolling 12-month period.   If Defendant elects to exceed this limit at EAF No. 4, then within one year of exceeding this limit, Defendant shall:

a.      install telescoping ductwork to continuously capture emissions at the Delta Section on EAF No. 4 or replace the current local hood with a side-draft hood and telescoping duct to continuously capture emissions at the annular spaces between the electrodes and the furnace cover on EAF No. 4;

b.      complete the Fume Collection System Study at EAF No. 4 as described in Paragraphs 28 through 31 of this Decree;

c.      implement the compliance provisions in Paragraph 18 (installation of bag leak detection system), Paragraphs 26 and 27 (bag leak detection system monitoring plan), and Paragraph 69 (Permit Requirements Applicable to EAF No. 4) of this Decree; and

d.      provide written notification to EPA, consistent with Section XVII (Notices), at least thirty (30) days prior to using EAF No. 4 to conduct more than 12-heats in a rolling 12-month period.

During this one year period, Defendant shall not conduct more than 24 total heats at EAF No. 4 starting from the date on which the 13th heat in the previous 12-month period is conducted.

12.     <u>Corrective Actions Completed Since EPA Issued the CAA NOV</u>.  As of the date of lodging of this Decree, Defendant has performed certain actions to address the violations alleged in the Complaint, including, but not limited to: (a) repairing and overhauling the EAF baghouses on EAF Nos. 4, 5, 6 and 7; (b) replacing damaged telescoping ductwork on EAF No. 5; (c) replacing the existing enclosing hood with a side-draft hood and telescoping duct on EAF No. 6; (d) rebuilding the slag door on EAF No. 6; (e) installing a telescoping duct on EAF No. 7; and (f) renovating the building roof canopy hood collection system currently in place at EAF No. 4.

13.     <u>Capture of EAF Emissions</u>.

a.      Defendant shall ensure, to the extent practicable, that the capture efficiency of each of its FCSs is sufficient to reduce or eliminate visible particulate matter ("PM") from the hood-furnace interface, the slag door and the annular spaces around the electrodes.

b.      As set forth in Paragraph 7(n) above, the FCS for EAF No. 4 currently differs from that which is employed on EAF Nos. 5, 6 and 7. While EAF No. 4 is operating,

Defendant shall utilize the FCS beginning at the Delta Section as its primary means of capturing emissions from the furnace. Whenever the Delta Section is disconnected while EAF No. 4 is operating, and until such time as the modifications required by Paragraph 11(a) are implemented, Defendant shall, to the extent practicable and as described in the Operation and Maintenance Plan ("O&M Plan") (Appendix B), operate the building roof canopy hood currently in place for EAF No. 4.

14.     Defendant shall ensure each FCS as defined under Paragraph 7(n) and as modified at EAF No. 4 under Paragraph 11(a), including related monitoring equipment, is maintained and continually operating while the associated EAF is operating. All leaks discovered in any FCS, shall be promptly repaired in accordance with the Defendant's O&M Plan (Appendix B).

15.     <u>Emission Limits for Defendant's Electric Arc Furnaces</u>. When an EAF is operating, Defendant shall capture PM from that EAF and direct such PM to the EAF's associated baghouse. Unless modified by a future Title V Permit or CAA construction permit, emissions from the outlet stack for the EAF baghouse shall not exceed the following levels, as determined by the methodology specified in Paragraphs 33 and 34 below:

          a.     1.90 pounds of PM per hour from the stack associated with EAF No. 4;

          b.     1.75 pounds of PM per hour from the stack associated with EAF No. 5;

          c.     2.38 pounds of PM per hour from the stack associated with EAF No. 6;

and

          d.     4.39 pounds of PM per hour from the stack associated with EAF No. 7.

16.     <u>Opacity of Emissions from the Facility</u>. Defendant shall not emit any un-captured PM (PM from an EAF not directly vented to its FCS) to the atmosphere from charging, melting, refining or tapping phases and/or PM from pouring operations that exhibit an average opacity

greater than 20 percent for any six minute period as determined using EPA Alternate Method 082 (77 Fed. Reg. 8865, February 15, 2012), or as calculated using EPA Method 9, 40 C.F.R. Pt. 60, Appendix A-4, or in accordance with the Electric Arc Furnace – Outdoor Fugitive Emissions Opacity Monitoring Protocol contained in Appendix C of this Decree.

17. <u>Installation and Operation of Continuous Parametric Monitoring System</u>. Within six (6) months of the Effective Date of this Decree, Defendant shall install, on each of EAF Nos. 5, 6 and 7, a continuous parametric monitoring system ("CPMS") to measure (a) pressure drop across each associated baghouse, and (b) hood static pressure. Within one-hundred eighty (180) days of resuming operations at EAF No. 4, Defendant shall install a CPMS. Defendant shall operate the CPMS at all times that its associated EAF is operating, except as otherwise provided in the O&M Plan.

18. <u>Installation and Operation of Bag Leak Detection System</u>. Within one (1) year of the Effective Date of this Decree, Defendant shall install, commission and calibrate a bag leak detection system with light scattering technology ("BLDS") located at the outlet of each baghouse associated with EAF Nos. 6 and 7. Within five (5) years of the Effective Date of this Decree, Defendant shall install, commission and calibrate a BLDS located at the outlet of the baghouse associated with EAF No. 5, and also with EAF No. 4, if EAF No. 4 is not permanently removed from service within five (5) years of the Effective Date of this Decree.

19. Within ninety (90) days of the Effective Date of this Decree, Defendant shall submit to EPA bid specifications for a scope of work to install a BLDS located at the outlet of each baghouse associated with EAF Nos. 6 and 7.

20.     No later than one (1) year of the Effective Date of this Decree, or as otherwise approved in writing by EPA, Defendant shall complete installation of each BLDS associated with EAF Nos. 6 and 7.

21.     Within four (4) years of the Effective Date of this Decree, Defendant shall submit to EPA bid specifications for a scope of work to install a BLDS located at the outlet of the baghouse associated with EAF No. 5, and also with EAF No. 4, if EAF No. 4 is not permanently removed from service within five (5) years of the Effective Date of this Decree.

22.     No later than five (5) years from the Effective Date of this Decree, or as otherwise approved in writing by EPA, Defendant shall complete installation of the BLDS associated with EAF No. 5, and also with EAF No. 4, if EAF No. 4 is not permanently removed from service within five (5) years of the Effective Date of this Decree.

23.     Defendant shall operate the BLDS at all times that its associated EAF is operating.

24.     Within ninety (90) days of the Effective Date of this Decree, and consistent with Defendant's O&M Plan (Appendix B), Defendant shall conduct daily clean-side inspections of every operating EAF baghouse, and shall document observations of these inspections. Defendant shall properly repair and perform necessary maintenance noted as a result of each clean side inspection.  Clean side inspections shall continue for each EAF until a dedicated BLDS system is installed on each operating EAF.

25.     The installation and operation of each BLDS at the Facility shall comply with the requirements in 40 C.F.R. §§ 63.7710(b)(4) and (5), 63.7736(c), 63.7740(b), 63.7741(b) and 63.7743(c)(2).

26.     BLDS Monitoring Plan.  Defendant shall develop and maintain at the Facility a BLDS Monitoring Plan, the scope of which shall include each BLDS then-installed at the Facility.  Within ninety (90) days of completing installation, commissioning and calibration of the BLDS, Defendant shall submit the BLDS Monitoring Plan to EPA for review and approval pursuant to Section VII (Approval of Deliverables) of this Decree.  The approved BLDS Monitoring Plan shall be incorporated into the facility's O&M Plan (Appendix B) as required in Paragraphs 54 and 55 of this Decree.

27.     Upon EPA's approval of the BLDS Monitoring Plan, Defendant shall operate and maintain each BLDS according to the approved BLDS Monitoring Plan.

28.     Electric Arc Furnace Fume Collection System Study.  Defendant shall complete testing pursuant to the EAF Fume Collection System Study ("FCS Study") to demonstrate that emissions capture performance for each EAF in operation can be maintained at all times during a heat, at or above an established capture hood static pressure that represents the minimum draw necessary to effectively capture visible PM from that EAF.  The FCS Study is attached as Appendix A to this Decree and is divided into two primary components, the Cold Work and the Hot Work.

29.     Defendant shall provide EPA written notice at least thirty (30) days prior to each performance monitoring date undertaken as part of the FCS Study, subject to a seven (7) day status and confirmation of the performance monitoring date, so that EPA may observe the performance monitoring, consistent with Section XIII (Information Collection and Retention) of this Decree.

30.     Within ten (10) months of the Effective Date of this Decree, or such later date as is approved in writing by EPA based on practical or safety concerns related to seasonal or other

constraints, Defendant shall complete the Cold Work portion (Phase 2A) of the FCS Study for EAF Nos. 5, 6 and 7, and shall submit a written report of Cold Work Findings to EPA for review and approval as provided by Section VII (Approval of Deliverables) and in a manner consistent with Section XVII (Notices) of this Decree.

31.     Within one-hundred twenty (120) days of EPA's approval of the Cold Work Findings report described in Paragraph 30, or such later date as is approved in writing by EPA based on the operating status of each EAF, practical, or safety concerns related to seasonal or other constraints, Defendant shall complete Phases 2B and 3 of the FCS Study in accordance with the requirements of Appendix A (FCS Study).  Within sixty (60) days of completing Phase 3 of the FCS Study (Appendix A), Defendant shall submit the Final FCS Report, consistent with the reporting requirements identified in the FCS Study, to EPA for review and approval as provided by Section VII (Approval of Deliverables) and consistent with Section XVII (Notices) of this Decree.

32.     Initial Performance Tests at the EAF Baghouse Stacks.  At the stack associated with each EAF, Defendant shall conduct performance tests to demonstrate compliance with the emission limits in Paragraph 15 above.

33.     Within sixty (60) days of its submission of the Final FCS Report, Defendant shall submit to EPA for review and approval a Performance Test Protocol for each operational EAF, pursuant to Section VII (Approval of Deliverables) and in a manner consistent with Section XVII (Notices) of this Decree.  The Performance Test Protocol shall specify three (3) performance stack test runs for particulate matter of at least one-hour each using EPA Methods 5 (40 C.F.R. Part 60, App. A-3) and 202 (40 C.F.R. Part 51, Appendix M), unless an alternative or equivalent method is approved, in writing, by the EPA; identify planned production levels; and identify the

name and qualifications of the person conducting the performance test. Defendant shall simultaneously provide the Performance Test Protocol to the Bureau of Air Management, Wisconsin Department of Natural Resources (WDNR) as provided in Section XVII (Notices).

34. Defendant shall conduct each performance test required by this Decree with a minimum average melt rate (in terms of tons of metal per hour) as follows:

        a.      EAF No. 4:  3.4 tons/hr.

        b.      EAF No. 5:  3.05 tons/hr.

        c.      EAF No. 6:  4.6 tons/hr.

        d.      EAF No. 7:  9.0 tons/hr.

35. Within sixty (60) days following EPA's approval of the Performance Test Protocol, Defendant shall conduct the initial performance test at each EAF included in the Performance Test Protocol.

36. Defendant shall provide EPA and WDNR with written notice, consistent with Section XVII (Notices), at least ten (10) business days prior to the earliest scheduled date for a performance test.

37. Within sixty (60) days of completing the initial performance test for an EAF, Defendant shall submit to EPA and WDNR, consistent with Section XVII (Notices), a report of the performance test results. The report shall describe all steps taken to comply with the Performance Test Protocol, the conditions under which each performance test was carried out, the parameters that were tested, and all results of the performance test(s). The report shall include the EAF melting rates, all supporting heat sheets, and the EAF hood static pressure measurements and baghouse total differential pressure drops at which Defendant operated the EAF and its associated FCS during each performance test. If an initial performance test

demonstrates compliance with the emission limits set forth in Paragraph 15 above, Defendant shall conduct additional stack performance tests as set forth in Paragraphs 40 through 44 below.

38.     If an initial performance test fails to demonstrate compliance with the emission limit for that EAF set forth in Paragraph 15, Defendant shall, within thirty (30) days of submitting the written report to EPA and WDNR: (a) determine and correct the cause of the failure and conduct a re-test in accordance with the procedures and requirements set forth in the Performance Test Protocol; and (b) submit to EPA and WDNR, consistent with Section XVII (Notices), a report of the performance test results. If a performance re-test demonstrates compliance with the emission limit for that EAF set forth in Paragraph 15 above, Defendant shall conduct additional stack performance tests as set forth in Paragraphs 40 through 44 below.

39.     If a performance re-test fails to demonstrate compliance with the EAF's applicable emission limit set forth in Paragraph 15, then within thirty (30) days of failing the stack performance re-test, Defendant shall submit for review and approval as provided by Section VII (Approval of Deliverables), and consistent with Section XVII (Notices), a plan to achieve continuous compliance with the PM emissions limitation for that EAF. Such plan shall describe any proposed operational restrictions and/or upgrades to the FCS associated with that EAF; and shall include a schedule for achieving continuous compliance with the emission limit for that EAF set forth in Paragraph 15 above and a schedule for conducting a re-test in accordance with the procedures and requirements set forth in the Performance Test Protocol. Within thirty (30) Days of receipt of EPA's approval of this plan, Defendant shall implement the approved plan consistent with the schedules therein.

40.     Subsequent Periodic Performance Tests at the Electric Arc Furnace Baghouse Stacks. Subsequent periodic performance tests shall be conducted within four (4) years of the

17

Effective date of this Decree, and every five (5) years thereafter pursuant to Defendant's permit, as amended pursuant to Paragraph 67 (EAF Nos. 5, 6 and 7) or 69 (EAF No. 4) of this Decree. Each subsequent performance test shall be conducted in accordance with a Performance Test Protocol submitted in accordance with Paragraph 33 above and submitted to EPA and WDNR ninety (90) days prior to the proposed performance test pursuant to Section VII (Approval of Deliverables) and consistent with Section XVII (Notices) of this Decree.

41.     Within sixty (60) days of completing each subsequent periodic performance test described in Paragraph 40, Defendant shall submit to EPA and WDNR, consistent with Section XVII (Notices), a report of the performance test results that includes the components set forth in Paragraph 37 above.

42.     If any subsequent periodic performance test fails to demonstrate compliance with the applicable emissions limit for that EAF set forth in Paragraph 15, Defendant shall, within thirty (30) days of issuance of the performance test report, determine and correct the cause of the failure, and then conduct a re-test in accordance with the procedures, schedule and requirements set forth in the Periodic Performance Test Protocol.

43.     If any subsequent periodic performance re-test fails to demonstrate compliance with the emissions limit for that EAF set forth in Paragraph 15, then within thirty (30) days after the failed re-test, Defendant shall submit to EPA for review and approval a plan to achieve continuous compliance with the emissions limit for that EAF. Such plan shall include the components set forth in Paragraph 39 above. Within thirty (30) Days of receipt of EPA's approval of the plan, Defendant shall implement the approved plan consistent with the schedule therein.

44.     <u>Opacity Observations During Stack Performance Tests</u>.  During each stack performance test performed under this Decree, Defendant shall simultaneously conduct visible opacity observations as specified in Paragraph 46 below.

45.     <u>Outdoor Opacity Observations</u>.  Within six (6) months of the Effective Date of this Consent Decree, or such later date as is approved in writing by EPA based on practical or safety concerns related to seasonal or other constraints, including unforeseen equipment difficulties (*e.g.*, hardware/software breakdown, challenges with processing of captured images, etc.), Defendant shall commence conducting visual opacity observations to demonstrate compliance with the outdoor opacity limit in Paragraph 16, above.  Outdoor opacity observations shall be conducted for fifteen (15) heats completed over the course of six (6) consecutive months at each of EAF Nos. 6 and 7, and twelve (12) consecutive months at EAF No. 5.  Within six (6) months of bringing EAF No. 4 into operation, or such later date as is approved in writing by EPA based on practical or safety concerns related to seasonal or other constraints, including unforeseen equipment difficulties that prohibit obtaining a valid opacity observation (*e.g.*, hardware/ software breakdown, challenges with processing of captured images, etc.),  Defendant shall commence conducting visual opacity observations for fifteen (15) heats to be completed over the course of twenty-four (24) consecutive months at EAF No. 4 to demonstrate compliance with the opacity limit in Paragraph 16, above.  Thereafter, until termination of this Decree, the Defendant shall conduct one (1) opacity observation every six (6) months at each then-operating EAF.

46.     All opacity observations shall be based on the methodology provided in Appendix C of this Decree, the EAF – Outdoor Fugitive Emissions Opacity Monitoring Protocol.  As provided for in Appendix C of this Decree, Defendant shall obtain, install and operate at least

two remotely monitored cameras certified for opacity readings under EPA Alternate Method 082 that shall be used to record opacity from specified locations at the Facility. Each opacity observation conducted pursuant to this Decree shall be conducted at one or more of the locations specified in Appendix C for a minimum of six (6) consecutive minutes to include the entire tapping and refining phases of the heat, regardless of the length of each phase.

47.     All opacity observations conducted pursuant to this Decree shall be conducted on consecutive heats, unless weather conditions are such that background lighting is insufficient to obtain an accurate observation, or other unforeseen equipment difficulties prohibit obtaining a valid opacity observation (*e.g.*, hardware/software breakdown, challenges with processing of captured images, etc.). Defendant shall document such qualifying weather and/or equipment conditions and provide this documentation within ten (10) Days of EPA's request. All successfully completed opacity observations shall be counted toward the minimum required total number of observations specified in Paragraph 45, even if the opacity observation was conducted during non-consecutive heats.

48.     Nighttime Opacity Observations. When opacity observations are conducted at night (from sunset to sunrise), the Defendant shall use a certified camera (EPA Alternate Method 082) to conduct visual opacity observations for each nighttime heat to be observed, according to the requirements in Paragraphs 47. As a contingency in the event that a certified camera (EPA Alternate Method 082) is not functioning properly (*e.g.*, due to related hardware and/or software issues, backlighting issues and/or other unforeseen factors), an observer certified by the California Air Resources Board ("CARB") to conduct nighttime opacity observations may conduct the visual opacity observations. Within ninety (90) days of the Effective Date of this Consent Decree, Defendant shall provide EPA for review and approval site-specific lighting

plans for: (1) conducting nighttime opacity observations with a certified observer; and (2) conducting nighttime opacity readings using a certified camera.

49.     Daytime Opacity Observations. When melting operations are conducted during daylight (after sunrise and prior to sunset), Defendant shall use a certified camera (EPA Alternate Method 082) to conduct visual opacity observations for each heat to be observed. Alternatively, in accordance with the protocol provided in Appendix C, a certified Method 9 observer may conduct the visual opacity observations consistent with Method 9.

50.     Consequence for Opacity Exceedance. In the event of an opacity exceedance, Defendant shall determine and correct the cause of the exceedance in accordance with the O&M Plan (Appendix B of this Decree).

51.     Air Quality Modeling. After completing the performance tests required for EAF Nos. 5, 6 and 7 under Paragraph 32, Defendant shall perform dispersion modeling of Defendant's PM10 emissions from the Facility using the AERMOD modeling system. AERMOD modeling shall be performed using the maximum emissions generating scenario for the Facility and the most recent performance test data for each EAF as obtained pursuant to this Decree.

52.     Within thirty (30) days of completing the performance tests required under Paragraph 32, and prior to performing the AERMOD modeling required by Paragraph 51, Defendant shall submit a AERMOD Modeling Protocol ("Modeling Protocol") to EPA for review and approval pursuant to Section VII (Approval of Deliverables) and consistent with Section XVII (Notices) of this Decree. Defendant shall simultaneously submit the Modeling Protocol to Air Pollution Control, WDNR consistent with Section XVII (Notices). The Modeling Protocol shall describe in detail the proposed modeling methods and procedures, the

source types and release parameters, maximum emission rate calculations, associated methodology, and the schedule for conducting the modeling.

53.    Defendant shall perform the dispersion modeling in accordance with the approved Protocol and approved schedule therein. Within thirty (30) days after the completion of the AERMOD modeling, Defendant shall submit a complete report of the results to EPA for review and approval pursuant to Section VII (Approval of Deliverables) and consistent with Section XVII (Notices) of this Decree.

54.    Facility Operations and Maintenance Plan ("O&M Plan").  Concurrent with submittal of the Final FCS Report described in Paragraph 31, Defendant shall amend the O&M Plan as necessary and in accordance with 40 C.F.R. § 63.7710(b).  Defendant shall submit the Final FCS Report, together with the O&M Plan, to EPA for review and approval pursuant to Section VII (Approval of Deliverables) of this Decree.  Defendant shall submit any proposed changes to the O&M Plan to EPA for review and approval in accordance with Section VII (Approval of Deliverables) for the duration of this Decree.

55.    Upon EPA's approval of the O&M Plan, Defendant shall, at all times, operate each FCS associated with EAF Nos. 5, 6 and 7 at its Facility in accordance with the O&M Plan. The FCS associated with EAF No. 4 shall also be operated in accordance with the O&M Plan if EAF No. 4 resumes operating.

56.    Startup, Shutdown and Malfunction Plan.  Defendant's Startup, Shutdown and Malfunction ("SSM Plan") is included as Appendix B to this Decree.  Until the now-current SSM Plan is revised, Defendant shall operate its Facility at all times in accordance with this SSM Plan.

57. Concurrent with Defendant's submission of the Final FCS Report, Defendant shall revise as necessary the SSM Plan, in accordance with 40 C.F.R. § 63.6(e)(3), and submit the revised SSM Plan to EPA for review and approval pursuant to Section VII (Approval of Deliverables) and consistent with Section XVII (Notices) of this Decree. The revised SSM Plan shall be incorporated into Defendant's O&M Plan described in Paragraph 54 of this Decree upon EPA's approval of the revised SSM Plan. Defendant shall submit any changes to the SSM Plan to EPA for review and approval pursuant to Section VII (Approval of Deliverables) and consistent with Section XVII (Notices) for the duration of this Decree. If EPA does not respond to Defendant with comments or approval within forty-five (45) days, Defendant shall operate its Facility at all times in accordance with the most recent revised SSM Plan that was submitted to EPA.

**Resource Conservation and Recovery Act**

58. Defendant shall at all times comply with federal and state laws and regulations governing generation, treatment, storage, and disposal of hazardous wastes, including the land disposal of hazardous waste. Defendant shall comply with RCRA §§ 3002, 3004 and 3005, 42 U.S.C. §§ 6922, 6924 and 6925; and Wisconsin Administrative Code ("WAC") NR 662, 665, 668 and 670, 40 C.F.R. Parts 262, 265, 268 and 270.

59. <u>Corrective Actions Completed Since EPA Issued the RCRA NOV</u>. On November 12, 2013, Defendant submitted to WDNR a closure plan for five hazardous waste storage areas associated with EAF baghouse dust at the Facility ("Closure Plan"). The Closure Plan was prepared to meet the closure requirements of Wisconsin's authorized RCRA program at WAC NR 665, Subpart G, and 40 C.F.R. Part 265, Subpart G. WDNR gave preliminary approval to the Closure Plan, and Defendant subsequently submitted a closure report to WDNR documenting

the actions taken to complete closure of the EAF dust storage areas. The closure report stated that decontamination of the five hazardous waste storage areas was completed on November 26, 2013. On February 14, 2014, WDNR notified Defendant that it considers Defendant to have completed all actions concerning the EAF dust storage areas as required by the WDNR RCRA closure requirements.

60. <u>Other Corrective Action Completed Since October 2009 When Analytical Results Showed that EAF Dust Is a Hazardous Waste</u>. On July 30, 2012, Defendant submitted to EPA a letter addressing the violations alleged by EPA in its July 3, 2012 RCRA NOV. The letter describes the actions the Defendant has taken to comply with the standards applicable to generators of hazardous waste at WAC NR Part 662 (40 C.F.R. Part 262). Among other things, Defendant has performed the following actions: (a) conducted initial RCRA training for its employees; (b) prepared a hazardous waste contingency plan and distributed it to appropriate local authorities; (c) maintained and operated the Facility to minimize the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste; (d) accumulated the EAF dust in containers that satisfy the requirements of WAC NR 662.034(1)(a)(1) and Subpart I of WAC NR 665; (e) shipped and manifested EAF dust off-site within ninety (90) days of being generated; (f) provided a one-time notification to each treatment or storage facility receiving EAF dust originating from the Facility; and (g) implemented a policy to routinely re-analyze the Facility's EAF dust every two years, or sooner.

61. <u>Containment of EAF Dust</u>. The Defendant has completed construction of a steel containment structure to surround each of the supersacks that capture dust from the four (4) EAF baghouses at the Facility. The supersacks are connected to and located beneath the dust

collectors associated with EAF Nos. 4, 5, 6 and 7. Defendant shall at all times use and maintain each containment structure. A diagram of the containment structure is attached in Appendix E.

## VII.   APPROVAL OF DELIVERABLES

62.     After review of any plan, report or other item that is required to be submitted pursuant to this Decree, EPA shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

63.     If the submission is approved pursuant to Section VII (Approval of Deliverables), Defendant shall take all actions required by the plan, report or other document, in accordance with the schedules and requirements of the plan, report or other document, as approved. If the submission is conditionally approved or approved only in part, pursuant to Section VII (Approval of Deliverables), Defendant shall, upon written direction from EPA, take all actions required by the approved plan, report or other item that EPA determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions under Section XV of this Decree (Dispute Resolution).

64.     If the submission is disapproved in whole or in part pursuant to Section VII (Approval of Deliverables), Defendant shall, within thirty (30) Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report or other item, or disapproved portion thereof, for approval by EPA. If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

65.     Any stipulated penalties applicable to the original submission, as provided in Section X (Stipulated Penalties) of this Decree, shall accrue during the 30 Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved

in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission. Any approval of a report by EPA before the Effective Date is effective and binding under this Decree upon entry.

66.     If a resubmitted plan, report or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies in accordance with the preceding Paragraphs in this Section, or may itself correct any deficiencies, subject to Defendant's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs in this Section.

## VIII.    PERMIT REQUIREMENTS

67.     Within one-hundred twenty (120) days of the first compliant performance test at EAF Nos. 5, 6 and 7, Defendant shall submit to WDNR an application to incorporate into an applicable federally-enforceable minor or major construction permit, or other permit that will ensure that the following requirements apply to the Facility and survive the termination of this Consent Decree under Section XXV (Termination):

      a.      the operating limits for EAF No. 4 set forth in Paragraphs 11 and 13;

      b.      the emission limit for each EAF described in Paragraph 15;

      c.      the opacity limit described in Paragraph 16;

      d.      the CPMS operating requirements described in Paragraph 17;

      e.      the BLDS operating and monitoring requirements described in Paragraphs 23, 25 and 27;

      f.      the minimum melt rates for performance testing in Paragraph 34;

g.      performance testing at each operating EAF once every five (5) years, beginning five (5) years from the date of the last performance test conducted under this Decree;

h.      the approved opacity monitoring procedure described in Paragraph 46 and the requirement to conduct one (1) opacity observation every six (6) months at each then-operating EAF; and,

i.      the O&M plan approved by EPA in Paragraph 55.

68.      Following submission of the complete permit application, Defendant shall promptly submit to WDNR all available information that WDNR seeks following its receipt of the permit application.  Promptly upon issuance of such permit or in conjunction with issuance of the permit, Defendant shall file any applications necessary to incorporate the requirements of those permits into any Title V Permit that may be required to operate the Facility.

69.      Additional Permit Requirements Related to EAF No. 4.

a.      Notwithstanding any required notice of startup of EAF No. 4 in Paragraph 11, Defendant shall obtain all applicable permits prior to operating EAF No. 4.

b.      If at any time during the term of this Decree Defendant elects to permanently retire EAF No. 4, then Defendant shall amend its federally-enforceable minor or major construction permit and Title V operating permit to remove EAF No. 4 and shall no longer operate EAF No. 4.

c.      If at any time during the term of this Decree Defendant elects to operate EAF No. 4 in a manner that exceeds the maximum operating constraints identified in Paragraph 11, then prior to such operation, Defendant shall upgrade the now-existing FCS as described in Paragraph 11, install a BLDS as provided in Paragraph 18, and amend its federally-enforceable minor or major construction permit and Title V operating permit to reflect these conditions.

d.      If Defendant elects to maintain the operating constraints provided for EAF No. 4 in Paragraph 11 when it requests termination of this Decree, then Defendant shall apply to amend its permit to permanently establish these operational constraints.

70.      Defendant shall submit a copy of any application for any air permit or air permit amendment required by this Decree (or any related correspondence) to EPA consistent with Section XVII (Notices) simultaneous with the application or correspondence submitted to WDNR.  Within fifteen (15) Days of receipt of any draft or final air permit, Defendant shall provide a copy of the same to EPA consistent with Section XVII (Notices).

71.      Defendant shall submit a copy of this Decree to WDNR with any applications for permits or permit amendments required by this Decree.

72.      Where any compliance obligation under this Section requires Defendant to obtain a federal, state or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section XIV of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## IX.      REPORTING REQUIREMENTS

73.      Beginning six (6) months after the Effective Date of this Decree, and every six (6) months thereafter until termination of this Decree pursuant to Section XXV (Termination), Defendant shall submit to EPA a Semi-Annual Status Report describing the status of any construction or compliance measures required by this Decree.  The Semi-Annual Status Report

shall include a description of any non-compliance with the requirements of this Decree and an explanation of the likely cause of the violation and of the remedial steps taken, or to be taken, to correct, prevent or minimize the future probability or adverse effects of such violation.

74.     If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall submit a Report of Non-Compliance and notify the United States of such violation and its likely duration, in writing, within fourteen (14) Days of the Day that Defendant first becomes aware of the violation or potential violation, with an explanation of the likely cause of the violation and of the remedial steps taken, or to be taken, to correct, prevent or minimize the future probability or adverse effects of such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the Report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within thirty (30) Days of the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section XIV of this Decree (Force Majeure) if Defendant elects to invoke Force Majeure.

75.     Whenever any violation of this Decree, or of any applicable permits, or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA via telephone or email as soon as possible, but no later than twenty-four (24) hours after Defendant first became aware of the violation or event.  This procedure is in addition to the written reporting requirements set forth in the preceding Paragraph.

76.    All reports submitted pursuant to the preceding three Paragraphs shall be submitted to the persons designated in Section XVII (Notices) of this Decree.  Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

77.    The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CAA or RCRA, or the implementing regulations of these Acts, or by any other federal, state or local law, regulation, permit or other requirement.

78.    Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Decree and as otherwise permitted by law.

## X.    STIPULATED PENALTIES

79.    Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section XIV (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or

approved under this Decree. Payment by Defendant of stipulated penalties shall not in and of itself constitute an admission of a violation of the Consent Decree.

80. The following stipulated penalty shall accrue per violation per Day for violation of the requirements identified in Paragraphs 15(a), 15(b), 15(c) and 15(d) related to the pounds per hour of PM that may be emitted from any EAF stack:

| Penalty per Violation per Day | Period of Noncompliance |
| --- | --- |
| $500(x) | Day 1 through 50 after a failed stack test |
| $2,000(x) | Day 51 through 99 after a failed stack test |
| $3,000(x) | Day 100 and over after a failed stack test |

a. where x derives from the degree of deviation from the emission limit at Paragraph 15(a), 1.90 pounds of PM per hour from the stack associated with EAF No. 4, consistent with Paragraph 15, as follows:

For emissions between 1.91 and 2.85 lbs./hr., $x = 1$

For emissions between 2.86 and 3.80 lbs./hr., $x = 2$

For emissions between 3.81 and 5.70 lbs./hr., $x = 3$

For emissions equal to or greater than 5.71 lbs./hr., $x = 4$

b. where x derives from the degree of deviation from the emission limit at Paragraph 15(b), 1.75 pounds of PM per hour from the stack associated with EAF No. 5 consistent with Paragraph 15, as follows:

For emissions between 1.76 and 2.63 lbs./hr., $x = 1$

For emissions between 2.64 and 3.50 lbs./hr., $x = 2$

For emissions between 3.51 and 5.25 lbs./hr., $x = 3$

For emissions equal to or greater than 5.26 lbs./hr., $x = 4$

c.        where x derives from the degree of deviation from the emission limit at Paragraph 15(c), 2.38 pounds of PM per hour from the stack associated with EAF No. 6 consistent with Paragraph 15, as follows:

For emissions between 2.39 and 3.57 lbs./hr., x = 1

For emissions between 3.58 and 4.76 lbs./hr., x = 2

For emissions between 4.77 and 7.14 lbs./hr., x = 3

For emissions equal to or greater than 7.15 lbs./hr., x = 4

d.        where x derives from the degree of deviation from the emission limit at Paragraph 15(d), 4.39 pounds of PM per hour from the stack associated with EAF No. 7 consistent with Paragraph 15, as follows:

For emissions between 4.40 and 6.59 lbs./hr., x = 1

For emissions between 6.60 and 8.78 lbs./hr., x = 2

For emissions between 8.79 and 13.17 lbs./hr., x = 3

For emissions equal to or greater than 13.18 lbs./hr., x = 4

e.        For rounding, see Memorandum from William G. Laxton and John S. Seitz to New Source Performance Standards/National Emission Standards for Hazardous Pollutants Compliance Contacts "Performance Test Calculation Guidelines" (June 6, 1990).

f.        Pursuant to CAA Section 113(e)(2), penalties shall accrue from the date of the failed stack test up to, but not including, the date on which Defendant demonstrates compliance with the emission limit in Paragraph 15 through a subsequent stack test, not including any day on which the non-compliant EAF is not operating or Defendant can prove by a preponderance of the evidence that there were intervening days during which no violation occurred or that the violation was not continuing in nature.

81.     The following stipulated penalties shall accrue per violation per Day for a violation of the outside opacity standard identified in Paragraph 16:

| Penalty per Violation per Day | Opacity Value |
| --- | --- |
| $250 | 21% - 30% |
| $1,000 | 31% - 40% |
| $1,500 | $\geq$ 41% |

82.     The following stipulated penalties shall accrue per violation per Day for any failure to meet any of the requirements identified in Paragraphs 17 (the provision on CPMS installation requirements only) 18, 19, 20, 21, 22, 24, 25 and 26 (BLDS requirements); Paragraphs 28 through 31 (EAF FCS Test requirements); Paragraphs 32 through 43 (performance test requirements); Paragraphs 44 through 49 (opacity observation requirements); Paragraph 50 (consequences of opacity exceedances); Paragraphs 51 through 53 (prepare and submit a modeling protocol, perform AERMOD modeling, and submit a final modeling report); Paragraph 54 (Submission of O&M Plan); and Paragraph 57 (Revision of SSM Plan):

| Penalty per Violation per Day | Period of Noncompliance |
| --- | --- |
| $250 | Day 1 through 15 |
| $1,000 | Day 16 through 30 |
| $1,500 | Day 31 and beyond |

83.     The following stipulated penalties shall accrue per violation per Day for any failure to meet any of the operating requirements identified in Paragraph 11 (EAF No. 4 operating requirements); Paragraph 17 (the provision on CPMS operating requirements only); Paragraphs 23 and 27 (BLDS operating requirements); Paragraph 55 (O&M Plan operating

requirements); Paragraphs 56-57 (SSM Plan operating requirements); and Paragraph 60 (containment of EAF dust):

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $250 | Day 1 through 15 |
| $2,000 | Day 16 through 30 |
| $4,000 | Day 31 and beyond |

84.     The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section IX (Reporting Requirements) of this Consent Decree:

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $500 | Day 1 through 15 |
| $1,000 | Day 16 through 30 |
| $1,500 | Day 31 and beyond |

85.     The following stipulated penalties shall be applicable for failing to meet any other requirement of this Consent Decree (aside from those specified by Paragraphs 80 through 84 above).

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $250 | Day 1 through 15 |
| $500 | Day 16 through 30 |
| $1,000 | Day 31 and beyond |

86.     Late Payment of Civil Penalty. If Defendant fails to pay the civil penalty required to be paid under Section V of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.

87.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Decree.

88.     Defendant shall pay any stipulated penalty within thirty (30) Days of receiving the United States' written demand except to the extent that Defendant invokes dispute resolution for alleged violations. Any demand for the payment of stipulated penalties will identify the particular violation(s) to which the stipulated penalty relates, the dates of violation, the stipulated penalty amount the United States is demanding for each violation, the calculation method underlying the demand and the grounds upon which the demand is based.

89.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Decree.

90.     Stipulated penalties shall continue to accrue, as provided in Paragraphs 79-86, during any Dispute Resolution, but Defendant need not pay until the following:

        a.     If the dispute is resolved by concession of the Defendant, agreement of the Parties, or by a decision of EPA that is not appealed to the Court, Defendant shall pay the accrued penalties demanded, together with interest, to the United States within thirty (30) Days of the effective date of such concession, agreement or the receipt of EPA's decision or order.

        b.     If the dispute is appealed to the court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the court to be owing,

together with interest, within sixty (60) days of the court's decision or order, except as provided in subparagraph c, below.

        c.     If any party appeals the court's decision, Defendant shall pay all accrued penalties as ordered by the court, together with interest, within fifteen (15) days of the date of final adjudication of the dispute.

        d.     If EPA issues a demand for stipulated penalties and defendant does not dispute a portion of the demand, or the parties resolve a portion of the demand, then defendant shall pay the accrued stipulated penalties associated with the undisputed or resolved portion, together with interest, to the United States, within thirty (30) days of the resolution.

91.     Upon the Effective Date of this Consent Decree, the stipulated penalty provisions of this Decree shall be enforceable.

92.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall identify the violation(s) for which the penalties are being paid. If Defendant fails to pay stipulated penalties according to the terms of this Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

93.     Subject to the provisions of Section XVIII of this Decree (Effect of Settlement/ Reservation of Rights), the stipulated penalties provided for in this Decree shall be in addition to any other rights, remedies or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law. Where a violation of this Decree is also a violation of the

CAA or RCRA, any of their implementing regulations, or any permit issued to Defendant pursuant to either the CAA or RCRA, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## XI.    <u>FORCE MAJEURE</u>

94.    Force majeure, for purposes of this Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, which delays or prevents the performance of any obligation under this Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise best efforts to fulfill the obligation includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to "prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Decree.

95.    If any event occurs or has occurred that may delay the performance of any obligation under this Decree, whether or not caused by a force majeure event, Defendant shall provide notice via telephone or email to Greg Gehrig, EPA Region 5 Air and Radiation Division, at 312-886-4434 or gehrig.greg@epa.gov within seventy-two (72) hours of when Defendant first knew that the event might cause a delay. Within five (5) days of providing such notice, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementing any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event, if it intends to assert such a claim; and a statement as to whether, in the opinion of

Defendant, such event may cause or contribute to an endangerment to public health, welfare, or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

96.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

97.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

98.     If Defendant elects to invoke the dispute resolution procedures set forth in Section XV (Dispute Resolution), it shall do so no later than ten (10) Days after receipt of EPA's notice of its decision regarding an extension related to a force majeure event. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied

with the requirements of Paragraph 94. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Decree identified to EPA and the Court.

## XII. DISPUTE RESOLUTION

99. Except as otherwise expressly provided for in Section VIII (Permit Requirements) of this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

100. _Informal Dispute Resolution_. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be binding on Defendant unless, within five (5) Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

101. _Formal Dispute Resolution_. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position

shall include, but need not be limited to, any factual data, analysis or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

102.     The United States shall serve its Statement of Position within thirty (30) Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with this Section.

103.     An administrative record of the dispute shall be maintained by EPA and shall contain all Statements of Position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

104.     Judicial Review. Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, consistent with Section XVII (Notices) of this Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within twenty (20) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Decree.

105.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum to the extent permitted by this Court's Local Rules.

106. <u>Standard of Review For Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Decree, in any dispute brought under Paragraph 101 (Formal Dispute Resolution) pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring EPA's approval under this Consent Decree, not to include Defendant's obligation to seek any modified or new air permits; the adequacy of the performance of work undertaken pursuant to this Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

107. <u>Standard of Review for Other Disputes</u>. Except as otherwise provided in this Decree, in any other dispute brought under Paragraph 101 (Formal Dispute Resolution), Defendant shall bear the burden of demonstrating that its position complies with and furthers the objectives of this Decree.

108. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone or affect in any way any obligation of Defendant under this Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Section XV (Dispute Resolution). If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

## XIII.   **INFORMATION COLLECTION AND RETENTION**

109.    The United States and its representatives, including attorneys, contractors and consultants, shall have the right of entry into the Facility covered by this Decree, at all reasonable times, upon presentation of credentials, to:

        a.      monitor the progress of activities required under this Decree;

        b.      verify any data or information submitted to the United States in accordance with the terms of this Decree;

        c.      obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

        d.      obtain documentary evidence, including photographs and similar data; and

        e.      assess defendant's compliance with this decree

110.    Upon request, Defendant shall provide to EPA, or its authorized representative, splits of any samples taken by Defendant.  Upon request, EPA shall provide to Defendant splits of any samples taken by EPA.

111.    Until three years after the termination of this Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, that relate in any manner to Defendant's performance of its obligations under this Decree.  This information retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information retention period, upon request by the United States, Defendant shall

provide copies of any documents, records, or other information required to be maintained under this Paragraph.

112.     At the conclusion of the information retention period provided in the preceding Paragraph, Defendant shall notify the United States at least ninety (90) Days prior to the destruction of any documents, records or other information subject to the requirements of the preceding Paragraph, and, upon request by the United States, Defendant shall deliver any such documents, records or other information to EPA.  Defendant may assert that certain documents, records or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide to the United States the following:  (a) the title of the document, record, or information; (b) the date of the document, record or information; (c) the name and title of each author of the document, record or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records or other information created or generated pursuant to the requirements of this Decree shall be withheld on grounds of privilege.

113.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI from disclosure to the public, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

114.     This Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations or permits, nor does it limit or affect any duty or obligation of Defendant to maintain

documents, records or other information imposed by applicable federal or state laws, regulations, or permits.

## XIV.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

115.    Claims Resolved.  This Consent Decree resolves the civil claims of the United States for the violations alleged in the CAA NOV, RCRA NOV and Complaint filed in this action through the date of lodging.

116.    The resolution of claims in the Paragraph above is conditioned upon the veracity and completeness of the Financial Information provided to EPA by Defendant, and the financial, insurance and indemnity certification made by Defendant in Paragraph 123.  If the Financial Information provided by Defendant, or the financial, insurance and indemnity certification made by Defendant in Paragraph 123, is subsequently determined by EPA to be false or, in any material respect, inaccurate, Defendant shall forfeit the civil penalty payment made pursuant to this Consent Decree, and this effect of settlement shall be null and void.  Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the United States' right to pursue any other causes of action arising from Defendant's false or materially inaccurate information.

117.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Decree, except as expressly stated in Paragraph 115 (Claims Resolved). This Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CAA or RCRA or their implementing regulations, or under other federal laws, regulations or permit conditions, except as expressly specified in Paragraph 115 (Claims Resolved).  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the

environmental arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Decree or otherwise.

118.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties or other appropriate relief relating to CAA or RCRA violations at the Facility, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 115 (Claims Resolved).

119.     This Decree is not a permit, or a modification of any permit, under any federal, State or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State and local laws, regulations and permits; and Defendant's compliance with this Decree shall be no defense to any action commenced pursuant to any such laws, regulations or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of CAA § 112, 42 U.S.C. § 7412, or CAA § 502, 42 U.S.C. § 7661a, RCRA § 3005(a), 42 U.S.C. § 6925(a), or RCRA 3004, 42 U.S.C. § 6924, or with any other provision of federal, State or local laws, regulations or permits.

120.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Decree, nor does it limit the rights of third parties, not party to this Decree, against Defendant, except as otherwise provided by law.

121.     This Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Decree.

122.     Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information provided by Defendant or the financial, insurance, or indemnity certification made by Defendant in Paragraph 123 is false or, in an material respect, inaccurate.

## XV.     CERTIFICATION

123.     Defendant certifies that, to the best of its knowledge and belief, after thorough inquiry, it has:

a.     not altered, mutilated, discarded, destroyed or otherwise disposed of any records, reports or other information relating to: (i) its potential CAA liability regarding the Facility since its receipt of the CAA NOV; and (ii) its potential RCRA liability regarding the Facility since its receipt of the RCRA NOV;

b.     fully complied with any and all EPA requests for information regarding the Facility and Defendant's financial circumstances;

c.     submitted to the United States financial information that fairly, accurately and materially sets forth Defendant's financial circumstances, and that those circumstances have not materially changed between the time the financial information was submitted to the United States and the time Defendant executes this Consent Decree; and

> d.     fully disclosed any information regarding the existence of any insurance

policies or indemnity agreements that may cover claims relating to the Facility, and submitted to

EPA and DOJ upon request such insurance policies, indemnity agreements, and information.

## XVI.     COSTS

124.    The Parties shall bear their own costs of this action, including attorneys' fees,

except that the United States shall be entitled to collect the costs (including attorneys' fees)

incurred in any action necessary to collect any portion of the civil penalty or any stipulated

penalties due but not paid by Defendant.

## XVII.     NOTICES

125.    Unless otherwise specified herein, whenever notifications, submissions or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-2-1-10613

and

Chief, Civil Division
United States Attorney's Office
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530
Milwaukee, WI 53202

To EPA:

Air and Radiation Division
U.S. Environmental Protection Agency
Region 5

77 W. Jackson Blvd. (AE-17J)
Chicago, IL 60604
Attn: Compliance Tracker

and

Office of Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 W. Jackson Blvd. (C-14J)
Chicago, IL 60604

To WDNR:

Bill Baumann
Acting Director
Bureau of Air Management
Wisconsin Department of Natural Resources
101 S. Webster St.
PO Box 7921 (AM/7)
Madison, WI 53702

and

Daniel Schramm
Air Management Supervisor
Wisconsin Department of Natural Resources
Bureau of Air Management
2300 N. Martin Luther King Jr. Dr.
Milwaukee, WI 53212

To Defendant:

Michael Wabiszewski
President and CEO
Maynard Steel Casting Company
2856 South 27th Street
Milwaukee, Wisconsin 53215

and

Steven M. Biskupic
Biskupic & Jacobs, S.C.
1045 W. Glen Oaks Lane, Suite 106
Mequon, WI 53092

and

Todd Palmer
Michael, Best and Friedrich LLP
100 E. Wisconsin Ave., Ste. 3300
Milwaukee, WI 53202

Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

126.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Decree or by mutual agreement of the Parties in writing.

## XVIII.     EFFECTIVE DATE

127.     The Effective Date of this Decree shall be the date upon which this Decree is entered by the Court or a motion to enter this Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Decree before entry, or the Court declines to enter this Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XIX.     RETENTION OF JURISDICTION

128.     The Court shall retain jurisdiction over this case until termination of this Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XV (Dispute Resolution) and XXV (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XX.   MODIFICATION

129.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

130.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section XV of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraphs 106 and 107 (Standard of Review), the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XXI.   TERMINATION

131.    After Defendant has:  (a) satisfactorily completed performance of the requirements of Section VI (Compliance Requirements) of this Decree as determined by EPA; (b) has thereafter maintained continuous satisfactory compliance with this Decree and Defendant's CAA permit for a period of twelve (12) consecutive months; and (c) paid the civil penalty and any accrued stipulated penalties as required by this Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

132.    Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Decree.  If the United States agrees that this Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating this Decree.

133.     If the United States does not agree that this Decree may be terminated, Defendant may invoke Dispute Resolution under Section XV of this Decree.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Section XV, until sixty (60) Days after service of its Request for Termination.

## XXII.     PUBLIC PARTICIPATION

134.     This Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding this Decree disclose facts or considerations indicating that this Decree is inappropriate, improper or inadequate. Defendant consents to entry of this Decree without further notice and agrees not to withdraw from or oppose entry of this Decree by the Court or to challenge any provision of this Decree, unless the United States has notified Defendant in writing that it no longer supports entry of this Decree.

## XXIII.     SIGNATORIES/SERVICE

135.     Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

136.     This Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

# XXIV.    APPENDICES

137.    The following appendices are attached to and part of this Consent Decree:

a.    Appendix A is the Fume Collection System Study.

b.    Appendix B is the O&M Plan.

c.    Appendix C is the Electric Arc Furnace – Outdoor Fugitive Emissions Opacity Monitoring Protocol.

d.    Appendix D is the List of Financial Information Submitted by Defendant for the Ability to Pay Analysis.

e.    Appendix E is the Diagram of RCRA Containment Structure.

# XXV.    INTEGRATION

138.    This Consent Decree constitutes the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding or promise constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXVI.  FINAL JUDGMENT

139.    Upon approval and entry of this Consent Decree by the Court, this Consent
Decree shall constitute a final judgment of the Court as to the United States and Defendant.

Dated and entered this 30th day of May , 2017.

William E. Duffin
[ William E. Duffin ]
Magistrate
UNITED STATES DISTRICT JUDGE

Eastern District of Wisconsin

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Maynard Steel Casting Company* (E.D. Wis.).

**FOR THE UNITED STATES OF AMERICA**

DATE: 02-28-2017

THOMAS A. MARIANI, JR.
Section Chief
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
Washington, DC 20530

DATE: 03/01/2017

JENNIFER A. LUKAS-JACKSON
Senior Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 305-2332
jennifer.lukas-jackson@usdoj.gov

DATE: 3-1-2017

CHRIS R. LARSEN
Assistant United States Attorney
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530
Milwaukee, WI 53202

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Maynard Steel Casting Company (E.D. Wis.).


DATE: 8/24/16 _____

ROBERT A. KAPLAN
Acting Regional Administrator
U.S. Environmental Protection Agency
Region 5


DATE: 7/15/2016 _____

T. LEVERETT NELSON
Regional Counsel
U.S. Environmental Protection Agency
Region 5


DATE: 7/11/16 _____

CATHERINE GARYPIE
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 W. Jackson Blvd.
Chicago, IL 60604

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Maynard Steel Casting Company* (E.D. Wis.).

**FOR MAYNARD STEEL CASTING COMPANY**

DATE: 8/5/16

MICHAEL WABISZEWSKI
President and CEO
Maynard Steel Casting Company
2856 South 27th Street
Milwaukee, WI 53215

DATE: 8/17/16

STEVEN M. BISKUPIC
Biskupic & Jacobs, S.C.
1045 W. Glen Oaks Lane, Suite 106
Mequon, WI 53092